Kenneth M. **RICKETTS**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 27A02–9103–CR–130.

Court of Appeals of Indiana, Second District.

Aug. 31, 1992.

Transfer Denied Oct. 15, 1992.

---

James A. McKown, Jr., Marion, Bruce D. Metzger, Richmond, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

Kenneth M. Ricketts appeals his judgments of conviction and sentence on two counts of neglect of a dependent, a class D felony,[1] and two counts of battery, a class D felony.[2]

We reverse Ricketts's neglect convictions and affirm his battery sentences.

### ISSUE

1. Whether sufficient evidence exists to support Ricketts's neglect convictions.

2. Whether the four consecutive three-year sentences imposed by the trial court are manifestly unreasonable.

### FACTS

On March 3, 1990, Ricketts and his wife, Jennifer, took three-year-old J.T. and six-year-old A.M., Jennifer's children from previous relationships, to Marion General Hospital to seek treatment for a possible overdose of children's Tylenol. During the examination, Nurse Linda Roseberry noticed bruises on the children's bodies and discussed the possibility of child abuse with the children's physician, Dr. Thomas Beck. She then contacted the Grant County Welfare Department (Welfare) who took custody of the children that evening and placed them in foster care.

At the time of placement, pediatrician Dr. James P. McCann's examination revealed both children possibly were malnourished, and A.M. had a urinary tract infection and slight anemia. Dr. McCann testified J.T.'s thirty-two pound weight placed him in the tenth percentile for weight, and his height put him between the tenth and twentieth percentile. A.M., who weighed thirty-seven and one-half pounds, ranked in the fifth to tenth percentile. Comparisons between Dr. McCann's findings and past records from the Women, Infants, and Children Program (WICP)[3] re-

vealed J.T. had gained only about three pounds over the prior twenty month period, and A.M. had gained only about two pounds in the previous two years.

At trial, both children testified Ricketts occasionally forced them to sleep in the bathtub without pillows and sheets, which A.M. described as "cold," and beat them periodically with his hands, a belt, a wooden board, or a switch for no apparent reason. A.M. complained of constant hunger, and both children spoke of the unavailability of "good food."

Initially, the children's foster parents found J.T. and A.M. to be voracious eaters, but their appetites gradually subsided to a more normal demand for food as their stay in the foster home progressed. During the first twenty-three day period with the foster parents, J.T. gained six pounds (an eighteen percent increase in body weight), reaching an appropriate weight for his age, and grew two and one-quarter inches in height. A.M. gained six and one-half pounds, increasing in overall body size to the fiftieth percentile range. A.M. also reported feeling warmer.

A jury found Ricketts guilty of two counts of neglect of a dependent and two counts of battery. The trial court sentenced Ricketts to four consecutive three-year terms. Ricketts appeals his two neglect convictions and his four sentences.

### DISCUSSION

#### I.

In reviewing a claim of insufficient evidence, this court's standard of review is well settled. We will neither reweigh the evidence nor reassess the credibility of the witnesses when reviewing the trial court's determination. *Mallory v. State* (1990), Ind.App., 563 N.E.2d 640, 642. On appeal we need only determine "whether reasonable minds could reach the inferences

1. *See* IC 35–46–1–4 (1992 Supp.).

2. *See* IC 35–42–2–1 (1992 Supp.).

3. The Women, Infants and Children Program is a federally-subsidized supplemental food program designed to provide nutrition courses and food stamps while measuring the height and weight of the children in six-month increments. Because children become ineligible for WICP services upon reaching the age of five, A.M. had not participated for almost two years by the time this action commenced.

drawn by the jury; if so, there is sufficient evidence." *Hill v. State* (1983), Ind., 445 N.E.2d 994, 996.

Ricketts claims the evidence is insufficient to sustain his neglect convictions in two particulars: it fails to prove beyond a reasonable doubt that the children were deprived of necessary support, defined as indispensable, absolute physical necessities, and it fails to prove he had the requisite culpability.

The State responds the evidence is sufficient to prove the children were deprived of necessary support, defined as the minimum standard of food, clothing, shelter, and medical attention, in terms of quality and quantity, that a person is required by law to furnish a dependent, and that Ricketts' conduct was knowing.

The pertinent statutes provides:

A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally;

(1) Places the dependent in a situation that may endanger his life or health;
(2) Abandons or cruelly confines the dependent;
(3) Deprives the dependent of necessary support; or
(4) Deprives the dependent of education as required by law;

commits neglect of a dependent, a class D felony.

IC 35–46–1–4(a) (1988).

### A.

Ind.Code 35–46–1–1 (1992 Supp.) defines "support" as "food, clothing, shelter, or medical care." However, the legislature failed to define the term "necessary"; consequently, we must determine the intent of the legislature in using the term.

■ Precedent reveals the term "necessary" does not have an exact meaning. "It is flexible and relative; it is an adjective expressing degree. The degree may range from mere convenience to that which is indispensable." *Indiana Broadcasting Corp. v. Star Stations of Indiana* (1979), 180 Ind.App. 207, 214, 388 N.E.2d 568, 573.

The issue here, then, is whether the legislature intended the phrase "necessary support" to refer to that quality and quantity of food, clothing, shelter, and medical care that is essential and indispensable to maintain human existence, or that quality and quantity of food, clothing, shelter, and medical care that is convenient to human life, or somewhere in between. We resolve this dilemma by referring to the dictionary definition of the term "necessary" to ascertain its plain and ordinary meaning. Both Random House Webster's College Dictionary and Webster's Third New International Dictionary define "necessary" as essential, indispensable, or absolutely required. Combining these definitions, necessary support is essential, indispensable or absolutely required food, clothing, shelter and medical care; i.e., food, clothing, shelter, and medical care without which the dependent's life or health is at risk or endangered.

This definition does not render superfluous subsection (1) of IC 35–46–1–4(a). This subsection provides:

A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) Places the dependent in a situation that may endanger his life or health;
. . .

commits neglect of a dependent, a class D felony.

IC 35–46–1–4(a)(1) (1988).

■ Subsection (1) addresses the situation where the actor *places* the dependent in a situation that may endanger the dependent's life or health while subsection (3), which addresses the deprivation of necessary support, concerns the situation where the actor deprives the dependent of food, clothing, shelter, or medical care that is essential, indispensable or absolutely required, or otherwise stated, without which the dependent's life or health is at risk or endangered. As these verbs are commonly used, they have distinct meanings. The verb "place" commonly is used to describe the conduct of putting something in a particular position while the verb "deprive" is used to describe the conduct of taking

away, removing, or divesting.[4] Thus, the offense of neglect of a dependent, defined as knowingly or intentionally depriving a dependent of necessary support, is the actor's knowing or intentional deprivational conduct regarding food, clothing, shelter, or medical care, that results in the dependent's health or life being at risk or in danger while the offense, defined as knowingly or intentionally placing a dependent in a situation that endangers the dependent's life or health, is the actor's knowing or intentional conduct of putting a dependent in a situation where the dependent's life or health is at risk or endangered.[5]

Using the definition of necessary support set forth above, we examine the evidence to determine whether it is sufficient to support Ricketts' convictions for child neglect.

■ Assuming there is evidence in the record from which a fact finder reasonably could conclude the children suffered from malnutrition, we must nevertheless agree with Ricketts' contention that evidence of malnutrition, in and of itself, does not support the conclusion that the person's health or life is at risk or in danger. A significant number of the world's population suffers from unbalanced or improper nutrition; unfortunately, another significant number suffers from lack of nourishment. The point is that there is a critical difference between malnutrition in the sense of poor nutrition and malnutrition which endangers or places at risk a dependent's health or life. Consequently, without evidence which does not exist in this record, the fact finder had no basis to reasonably infer that the malnutrition suffered by J.T. and A.M. was

such that their health was at risk or lives were endangered.[6]

■ In addition, the evidence is insufficient to support a reasonable fact finder's determination that Ricketts' conduct was knowing, as alleged in the information. Proper analysis of the child neglect statute requires this court to apply a subjective standard to the term "knowingly." *See Armour v. State* (1985), Ind., 479 N.E.2d 1294, 1297 ("[T]he accused must have been subjectively aware of a high probability that he placed the dependent ... [at risk].").

The insufficiency of the evidence as to the children's health or life being at risk or in danger necessarily precludes a reasonable fact finder from determining that Ricketts knowingly deprived the children of necessary support.

The evidence is insufficient to sustain Ricketts' convictions of child neglect. Thus, upon remand, the trial court is instructed to vacate its judgments of conviction and sentence on the two child neglect counts.

## II.

■ Ricketts contends the four consecutive three-year sentences imposed by the trial court are manifestly unreasonable.

IC 35–50–2–7 (1992 Supp.) provides, in relevant part, "A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances." The trial

---

**4.** *See* Random House Webster's College Dictionary.

**5.** We reach this conclusion mindful of the purpose of the neglect statute to protect children as well as other dependents. However, other statutes, such as those relating to children in need of services, are intended to address situations where the dependent child is deprived of support which the parent or custodian is able to provide but in which the child's life or health is not at risk or endangered.

**6.** Had the State introduced evidence that the children's diet subjected their health or their

lives to a risk or danger that was actual and appreciable, our result might have been different. *See State v. Downey* (1985), Ind., 476 N.E.2d 121, 123. The injury to the dependent need not be actual. *See Johnson v. State* (1990), Ind.App., 555 N.E.2d 1362, 1366. The fact that the harm did not occur "is of no consequence under the statute where the danger of [harm] is both actual and appreciable." *Id.* Of course, the evidence would have had to prove that it was apparent to Ricketts that the children's condition presented a risk to their health or a danger to their lives.

court sentenced Ricketts to three years imprisonment on each count to run consecutively, for a total of twelve years. It properly cited both aggravating and mitigating circumstances, concluding that Ricketts's need for corrective and rehabilitative treatment in a penal facility, evidenced by his prior criminal record, his disdain for the criminal justice system, as reflected by two attempts to flee from enforcement authorities in this case, and the tender age of both victims outweighed the mitigating factor of his family's strong support. *See* IC 35–38–1–7.1 (1992 Supp.). Given the trial court's broad discretionary power to consider whether the existence of aggravating factors warrant enhancement of a sentence and whether sentences for a defendant's multiple convictions should be served concurrently or consecutively, *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905, as well as the fact that a trial court needs only one valid aggravating factor to justify sentence enhancement and consecutive sentences, *Stanger v. State* (1989), Ind.App., 545 N.E.2d 1105, 1119, we find the trial court's decision to be a valid one.

Ricketts' convictions of neglect ordered vacated; his sentences for battery affirmed.

SULLIVAN, J., concurs, with separate concurring opinion.

GARRARD, J., dissents, with separate opinion.

SULLIVAN, Judge, concurring.

I am unable to discern any meaningful impact occasioned by the majority's treatment of subsections (1) and (3) of the neglect statute. See Opinion pp. 600–601. The majority concludes that subsection (1) which concerns placing the dependent in an endangering situation must be given an entirely disparate meaning from that of subsection (3) which concerns the deprivation of necessary support. I disagree with this analysis because an accused may clearly place a dependent in a life endangering situation by depriving the dependent of necessary support. The provisions are not coextensive but there is a degree of overlap between the two.

In all other respects I fully concur in the majority opinion.

GARRARD, Judge, dissenting.

While I agree that the court properly imposed consecutive sentences, I dissent to reversal of the convictions for neglect.

There was ample evidence that the children were malnourished. For example, after observing their gains in height and weight after a short period of foster care Dr. McCann testified that it was his opinion both suffered from malnutrition. The totality of the circumstances, including the children's appearance, their complaints about food and their descriptions of how they were cared for, sustain the reasonable inference that Ricketts was aware of a high probability that the children were not being properly fed and were malnourished.

As for the statutory element of harm, it seems to me that the term "malnutrition" clearly denotes a lack of necessary or proper food substances in the body (or the inability of the body to properly absorb the same, an alternative negated by the gains each child made when placed in foster care). It would then seem to follow that children suffering from malnutrition *a fortiori* have had their health endangered. And that is true whether the malnutrition is the result of the culpable act of some particular person, or the consequence of famine or some other cause.

By knowingly failing to provide the children with necessary food so as to endanger their health, Ricketts committed the charged offenses.

I would affirm the judgment in all respects.