Gary MILLER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A01–9312–CR–396.

Court of Appeals of Indiana, First District.

May 17, 1995.

Transfer Denied July 24, 1995.

Dawn R. Elston, Chief Public Defender, Jeffersonville, for appellant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

BAKER, Judge.

Appellant-defendant Gary Miller appeals his convictions on two counts of Burglary[1], as Class B felonies, and one count of Burglary, a Class C felony, claiming that: 1) he was entitled to a discharge under Ind.Crim.Rule 4(C), 2) he was denied his right to effective assistance of counsel, 3) the deputy prosecutor committed misconduct which denied him a fair trial, and 4) the trial court failed to adequately state its reasons for imposing consecutive sentences and failed to consider mitigating circumstances.

## FACTS

In January 1992, while Miller was in the Clark County Jail on charges pending in Floyd County, he asked to speak with a detective in order to "clear up" some burglaries in Clark County. Subsequently, Miller met with Clark County Police Detective Harold Kramer. After Detective Kramer advised him of his *Miranda* rights, Miller made a tape recorded statement in which he confessed his involvement in numerous burglaries. In that statement, Miller described his accomplices, the manner of entry, the interior of the buildings and homes, the items taken, and what happened to the stolen property. Thereafter, Miller and Detective Kramer drove around Clark County and Miller directed Detective Kramer to several of the places that Miller had burglarized. Detective Kramer later corroborated this information and confirmed that burglaries had taken place at those locations. As a result of this information, on March 16, 1992, the State charged Miller with five counts of burglary and one count of theft.

On July 27, 1993, Miller filed a motion for discharge under Crim.R. 4(C) which the trial court denied. That same day, Miller's jury trial began. During the State's opening

statement, Miller objected to a comment made by the deputy prosecutor and moved for a mistrial. The trial court denied the motion. The jury convicted Miller of three counts of burglary and the trial court sentenced him to ten years for each of the two Class B felonies and five years for the Class C felony. The judge suspended five years of each of the Class B felonies and ordered the sentences to be served consecutively, for a total of fifteen years imprisonment.

## DISCUSSION AND DECISION

### I. Motion for Discharge

Miller contends that the trial court erred when it failed to grant his motion for discharge under Ind.Crim.Rule 4(C). Specifically, Miller asserts that because he was not brought to trial within one year after his arrest, and he was not responsible for the delay, he should have been discharged pursuant to Crim.R. 4(C). Crim.R. 4(C) provides:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar....

Here, the record reveals that Miller was arrested on March 18, 1992. Thus, the State had a duty to bring Miller to trial on or before March 18, 1993, unless the period was extended by a delay caused by Miller's act or by court congestion. *See State v. Smith* (1986), Ind.App., 495 N.E.2d 539, 541. Miller's trial did not begin until July 27, 1993, almost one and a half years after his arrest.

The following chronology sets out the delays relevant to our decision and identifies which delays are attributable to the State.

---

1. IND.CODE § 35–43–2–1.

| Description | Date | State |
| --- | --- | --- |
| Miller arrested, trial set for 6/16/92 | 3/18/92 | |
| Trial reset for 8/25/92 | 6/16/92 | 152 days |
| Pre-trial conference, plea agreement announced | 8/17/92 | |
| Statement of plea agreement filed | 2/16/93 | |
| Parties appear for sentencing, court rejects plea | 3/10/93 | |
| Trial set for 7/27/93 | 7/1/93 | 139 days |
| Trial begins | 7/27/93 | |
| | | 291 days |

Initially, we note that the one year time period under Crim.R. 4(C) began to run on March 18, 1992, when Miller was arrested. However, the trial court found that the time period temporarily ceased running against the State on August 17, 1992, when the parties announced at the pretrial conference that a plea agreement had been reached. Miller contends that the trial court's determination is erroneous in that he is not responsible for the delay resulting from the announcement that the parties had entered into a plea agreement. As Miller asserts, delay is not chargeable to a defendant because he engages in informal plea negotiations with the State, unless it appears that the defendant's acts caused an actual delay in the scheduling of his trial. *Smith*, 495 N.E.2d at 542. In *Smith*, the State failed to set the case for trial because it was engaged in plea negotiations with Smith and was waiting for his response to the State's plea offer. The court held that the resulting delay was attributable to the State. Miller argues that, like the defendant in *Smith*, he was engaged in informal plea negotiations and did not cause any delay during this time and thus, this delay is attributable to the State. We disagree.

Unlike the defendant in *Smith*, Miller was not merely involved in informal plea negotiations, but he had informed the trial court that he had reached and entered into a plea agreement with the State. Since the chronological case summary reflected that a plea agreement had been reached at the pretrial conference, it would have been futile to try Miller during this time period. Thus, his action of agreeing to a plea caused a delay in the scheduling of his trial. Accordingly, the time period under Crim.R. 4(C) was extended during the period of delay between August 17, 1992, when the court was informed that the parties had entered into a plea agreement, and March 10, 1993, when the trial court rejected the plea agreement. *See Butts v. State* (1989), Ind.App., 545 N.E.2d 1120, 1123 (time between trial court's rejection of plea and the time set for trial is chargeable to the State).

Finally, as the chart above indicates, the State is charged with a total of 291 days between Miller's arrest and his trial. Thus, the State brought Miller to trial within the confines of Crim.R. 4(C) and the trial court properly denied Miller's motion for discharge.

*II.  Ineffective Assistance of Counsel*

Miller contends that he was denied his right to effective assistance of counsel when his counsel failed to file certain motions requested by him and failed to file a motion for a continuance. Specifically, Miller asserts that the filing of these motions would have provided additional time to prepare his defense, which might have resulted in a different verdict.[2]

2.  Ironically, on the one hand, Miller argues that the State failed to bring him to trial on time and,

In order to prevail on a claim of ineffective assistance of counsel, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance, the result of the proceedings would have been different. *McCollum v. State* (1991), Ind., 582 N.E.2d 804, 810, (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). A defendant must overcome a strong presumption that his trial counsel provided effective assistance. *Id.* The decision whether to file particular motions is one of trial strategy and does not constitute ineffective assistance absent an express showing to the contrary. *Little v. State* (1986), Ind., 501 N.E.2d 447, 449.

We observe that Miller has failed to identify what type of motions he requested counsel to file and when, during the proceedings, he requested that counsel file a continuance. Thus, he has not shown the merits of these motions or their potential for aiding in his defense. Accordingly, Miller has failed to overcome the strong presumption that his counsel provided effective assistance. *See id.* Moreover, Miller has failed to demonstrate a reasonable probability that, but for his counsel's performance, the result of the trial would have been different. His assertion that the filing of these motions would have provided additional time to prepare his defense which might have resulted in a different verdict is mere speculation. Thus, Miller has failed to establish that he was denied his right to effective assistance of counsel.

### III. Prosecutorial Misconduct

Miller contends that the trial court erred in denying his motion for a mistrial based on alleged prosecutorial misconduct. The determination of whether to grant a mistrial rests within the sound discretion of the trial court. *James v. State* (1993), Ind., 613 N.E.2d 15, 22. When reviewing a claim of prosecutorial misconduct, we must determine whether the prosecutor committed misconduct which placed the defendant in a position of grave peril. *Marshall v. State* (1993),

Ind., 621 N.E.2d 308, 320. The determination of grave peril involves consideration of the probable persuasive effect of the misconduct on the jury's decision. *Id.*

Miller argues that the deputy prosecutor committed misconduct during his opening statement when he stated "I didn't say anything about the Defendant. Other than what's on the tape I can't tell you anything. It's that important." Record at 190–91. Miller contends that the prosecutor's comments denied him a fair trial because they implied that he had information other than the tape which established Miller's guilt. *See Miller v. State* (1993), Ind., 623 N.E.2d 403, 407–08.

We disagree that the deputy prosecutor's statements imply that he had information outside the evidence presented to the jury which convinced him of the defendant's guilt. Just prior to these comments, he stated "Listen to everything and then once the case is closed please go back and render the verdict based on the evidence." R. at 190. A reasonable inference from these comments, taken in context, is that Miller's taped statement was the only direct evidence against Miller and, therefore, it was important for the jury to listen to it carefully. Thus, these comments do not constitute misconduct. Moreover, the deputy prosecutor's comments did not place Miller in a position of grave peril. Given the evidence against Miller, including his taped confession, it is unlikely that these comments had a persuasive effect on the jury's decision. Accordingly, the trial court properly denied Miller's motion for a mistrial.

### IV. Consecutive Sentences

First, Miller asserts that the trial court failed to adequately state the factors supporting its imposition of consecutive sentences. The decision whether to impose consecutive sentences lies within the discretion of the trial court. *McCollum*, 582 N.E.2d at 817. If the trial court orders consecutive sentences, the record must show that the decision was based on a consideration of the facts of the specific crime, the aggravating

---

on the other hand, he complains that he needed additional time to prepare his defense.

and mitigating circumstances, and the relation of the sentence to the objectives to be served by that sentence. *Id.*

 In this case, the trial court stated three reasons for imposing consecutive sentences: 1) that Miller committed numerous burglaries, 2) that he had a prior criminal record, and 3) that to impose a lesser sentence would reduce the effect of the sentence. We note that a single aggravating factor is sufficient to support consecutive sentences. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1092. A trial court may consider a defendant's prior criminal record as a factor favoring the imposition of consecutive sentences. IND.CODE § 35-38-1-7(b). Miller contends that the trial court's statement of this factor was not sufficiently specific in that it did not recite the incidents comprising his criminal record. Here, however, the trial court considered the presentence report which listed Miller's prior convictions. Where, as here, the record reflects that the judge engaged in an evaluation and balancing process, the purpose of the specificity requirement to ensure the reviewability of the sentence is satisfied. *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 72 (purpose of specificity requirement satisfied where trial court failed to recite the prior crimes constituting defendant's criminal record in its sentencing statement but judge considered presentence report). Accordingly, we find that the trial court adequately stated its reasons for imposing a consecutive sentence based on the facts of the specific crime.

Next, Miller contends that the trial court failed to consider mitigating circumstances. Although a trial court must consider the evidence of mitigating factors presented by a defendant, a finding of mitigating circumstances is not mandatory and lies within the discretion of the trial court. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1374. Here, there is no evidence that the trial court failed to consider mitigating circumstances. At the sentencing hearing, the trial court specifically noted that it considered Miller's cooperation with the police. It was within the court's discretion to conclude

that this factor did not require a lesser sentence than that which was imposed.

Judgment affirmed.

ROBERTSON and DARDEN, JJ., concur.