Leon JACKSON, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9606–CR–323.

Court of Appeals of Indiana.

July 8, 1997.

Transfer Denied Sept. 3, 1997.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Appellant-defendant Leon Jackson, Jr. appeals his conviction for Incest,[1] a Class C felony, claiming that his conviction was not supported by sufficient evidence and he was denied the effective assistance of counsel.

## FACTS

The facts most favorable to the judgment reveal that on the evening of November 11, 1994, Jackson entered the bedroom of sixteen-year-old T.J., who was sleeping. While in T.J.'s bedroom, Jackson got into bed with her and kissed her on the mouth. When T.J. awakened and protested, Jackson grabbed her face and forced her to continue kissing him. Jackson then partially removed one of T.J.'s pajama legs, engaged in vaginal intercourse with her and ejaculated outside of her. After Jackson left the bedroom, T.J. show-

1. IND. CODE § 35–46–1–3.

ered and placed her pajamas in her clothes hamper.

The next day, T.J. reported Jackson's attack to the Indianapolis Police Department. T.J. was then transported to Wishard Hospital, where a physician obtained samples from her for a rape kit. Laboratory analysis of the samples revealed no semen or sperm. Later, the laboratory analyzed T.J.'s pajamas and discovered semen on both the top and bottom of the pajamas.

On December 30, 1994, the State charged Jackson with incest, a class C felony. Following a bench trial, Jackson was convicted as charged and sentenced to two years imprisonment, all of which was suspended, and placed on probation.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

First, Jackson contends that the evidence is insufficient to support his conviction for incest. Specifically, he argues that the State failed to present evidence that he was biologically related to T.J. or that he engaged in sexual intercourse with her.

■ Our standard for reviewing sufficiency claims is well settled. We will not reweigh the evidence or reassess witness credibility. *Ricketts v. State*, 598 N.E.2d 597, 599 (Ind.Ct.App.1992), *trans. denied.* We consider only the evidence and reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if substantial evidence of probative value supports the conclusion of the trier of fact. *Mallory v. State*, 563 N.E.2d 640, 642 (Ind.Ct.App.1990), *trans. denied.*

### A. Biological Relationship

■ The statute defining incest provides as follows:

A person eighteen (18) years of age or older who engages in sexual intercourse or deviate sexual conduct with another person, when the person knows that the other person is related to the person biologically as a parent, child, grandparent, grandchild, sibling, aunt, uncle, niece, or nephew, commits incest, a Class C felony.

I.C. § 35–46–1–3(a). This section requires the State to prove that Jackson and T.J. are biologically related. According to Jackson, because the State did not question T.J. or any other witness regarding the exact nature of her relationship to Jackson, it failed to prove that he was biologically related to T.J. We disagree.

Although the record reveals that the State did not directly ask T.J. whether she was biologically related to Jackson, other evidence in the record sufficiently established that Jackson was her biological father. Specifically, the State established through T.J.'s testimony that Patricia Jackson was T.J.'s biological mother, that Patricia and Jackson were divorced, that T.J. has the Jackson family name and that Jackson paid Patricia child support for T.J. after the couple's divorce. T.J. also testified that she had routinely visited Jackson, spending significant portions of her summers with him. Additionally, T.J. stated that with her mother's consent, she had moved into Jackson's home and he had financially supported her.

Further, the record reveals that T.J., who was sixteen years old, referred to Jackson throughout the trial as her "father." In contrast, T.J. referred to one of her siblings as her "stepsister." R. at 98. This testimony demonstrates that T.J. was aware of the distinction between a natural parent and a step parent.

Finally, a medical report prepared by Wishard Hospital personnel after T.J. reported the rape described her relationship with Jackson as biological. Taken together, this evidence is sufficient to support a determination that Jackson is T.J.'s biological parent and, as a result, supports his conviction for incest.

### B. Intercourse

■ Jackson also challenges the sufficiency of the evidence showing that he engaged in sexual intercourse with T.J. In support of his argument, Jackson points to testimony by T.J. that she did not see or feel Jackson's penis and that she was unsure how to describe what occurred between her and Jackson. R. at 92.

Notwithstanding Jackson's protestations, the record reveals that T.J. specifically testified that Jackson entered her room, kissed her, removed her pajamas and engaged in sexual intercourse. Further, T.J. testified that Jackson penetrated her and then ejaculated outside of her. T.J.'s testimony was corroborated by the laboratory analysis of her pajamas, which revealed evidence of semen. This evidence is sufficient to support Jackson's conviction. *See Lowe v. State,* 534 N.E.2d 1099, 1100 (Ind.1989) (uncorroborated testimony of victim held sufficient to sustain incest conviction).

## II. Effective Assistance of Counsel

Next, Jackson contends that he was denied the effective assistance of counsel. In particular, he alleges that counsel was ineffective for the following reasons: 1) he failed to call the physician who examined T.J. as a witness; 2) he failed to call Jackson's former girlfriend, Luckensia Brown, as a witness; 3) he failed to request a psychological evaluation of T.J.; and 4) he failed to maintain organized files during the proceedings.

■ When faced with allegations of ineffective assistance of counsel, we apply the two-step process articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We first determine whether counsel's performance fell outside the wide range of professional competence. *Id.* We favor counsel with a strong presumption that competent assistance was rendered. *Id.* If we find counsel's performance was deficient, we then determine whether the defense was prejudiced by the deficient performance. *Id.* We will not speculate about what may have been a more advantageous strategy and isolated bad tactics or inexperience do not necessarily amount to ineffective assistance. *Gann v. State,* 570 N.E.2d 976, 978 (Ind.Ct.App.1991), *trans. denied.*

■ First, Jackson contends that his counsel was deficient because he failed to call the physician who examined T.J. at the hospital to testify during trial. However, we have repeatedly stated that the selection of witnesses is a matter of trial strategy which we will not second guess. *Fugate v. State,* 608 N.E.2d 1370, 1373 (Ind.1993). Moreover,

Jackson has failed to provide us with an affidavit showing the substance of the physician's testimony or how it would have been beneficial to Jackson's defense. Without this, we are unable to review trial counsel's performance. *Id.* Thus, we cannot say that Jackson's trial counsel was ineffective for failing to call the physician to testify.

■ Next, Jackson argues that his counsel was ineffective for failing to call Luckensia Brown, Jackson's former girlfriend, as a witness. However, the record reveals that Brown was present during trial and testified during the State's case-in-chief. Further, the record shows that Jackson's counsel cross-examined Brown thoroughly. Finally, Jackson has again failed to tender an affidavit showing the substance of Brown's testimony had his counsel called her as a witness. Thus, Jackson has not demonstrated that his counsel was defective.

■ Jackson's next allegation of ineffectiveness is based upon his counsel's failure to request a psychiatric or psychological evaluation of T.J. According to Jackson, such an evaluation could have placed doubt of T.J.'s credibility by showing that she was unstable and possibly schizophrenic. However, Jackson presents no evidence to support his speculation regarding T.J.'s mental state. Additionally, the decision whether to file certain motions is one of trial strategy and, absent evidence to the contrary, does not constitute ineffective assistance. *Miller v. State,* 650 N.E.2d 326, 328 (Ind.Ct.App.1995), *trans. denied.* Finally, the record reveals that during trial, Jackson's counsel carefully cross-examined T.J. regarding her credibility and her reasons for making allegations against Jackson. Under these circumstances, Jackson's counsel did not provide ineffective assistance.

■ Finally, Jackson contends that his trial counsel was deficient because he failed to maintain organized files during the trial. Specifically, Jackson points to his counsel's examination of two witnesses, during which counsel was unable to locate certain pages of depositions and witness statements. Additionally, Jackson argues that his counsel

failed to impeach T.J. through evidence of prior inconsistent statements.

Once again, however, Jackson has failed to show this court what the missing pages would have shown or how the pages would have altered either the witnesses' testimony or the outcome of his trial. As a result, we cannot conclude that counsel rendered ineffective assistance because his files were unorganized.

■ Similarly, we conclude that counsel was not deficient for failing to impeach T.J.'s testimony through prior inconsistent statements. In the present case, the record reveals that during T.J.'s cross examination, Jackson's counsel questioned her regarding whether she fabricated the allegations against Jackson because she was unhappy with him, whether she had previously expressed hostility to Jackson in her letters, whether she had given inconsistent statements of the attack and whether she had been in trouble previously with the authorities. This cross-examination reveals that Jackson's counsel made a significant attempt to attack T.J.'s credibility. As a result, we reject Jackson's contention that his counsel's failure to confront T.J. with other inconsistencies was deficient. Jackson was not denied the effective assistance of counsel.

Judgment affirmed.

FRIEDLANDER, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

Prior to our legislature's 1987 amendment[2] to the incest statute, the evidence relied upon by the majority may have been sufficient. That version of the statute provided:

"A person eighteen (18) years of age or older who engages in sexual intercourse or deviate sexual conduct with another person, *when he knows that the other person is his parent, stepparent, child, stepchild,* grandparent, grandchild, sibling, aunt, uncle, niece, or nephew, commits incest...."

**2.** P.L. 158–1987, Sec. 5.

IC 35–46–1–3(a) (1986) (emphasis added). Under this version a biological relationship was not a necessary element of the crime of incest, and a conviction could rest on a non-biological relationship, such as that between an adoptive parent and his adopted child, or that between a stepparent and his stepchild. *See Bryant v. State,* 256 Ind. 587, 271 N.E.2d 127 (Ind.1971) (affirming stepfather's conviction of incest with stepdaughter).

In 1987, our legislature amended the incest statute, requiring a biological relationship between defendant and victim and deleting the terms "stepparent" and "stepchild." Thus, under the current statute, one who adopts a child, or who becomes a child's stepparent, cannot be convicted of incest with that child, even though that person is in a parental relationship with the child. A parent of an adopted child or stepchild stands in the same shoes under the current incest statute as does any adult stranger to the child victim; while such a person may be convicted of some other crime, e.g., child molest, he may not be convicted of incest.

Because our legislature has eliminated non-biological relationships from the incest statute, we must look beyond the parental relationship for evidence sufficient to prove a biological relationship.

The State established through T.J.'s testimony that Patricia Jackson was T.J.'s biological mother, that Patricia and Leon Jackson were divorced, that T.J. has the Jackson family name, and that Jackson paid T.J.'s mother child support for T.J. after the couple's divorce. T.J. also testified that with her mother's consent she moved into Jackson's home and he financially supported her. Prior to her move to Indianapolis, T.J. routinely visited Jackson, spending significant portions of summers with him in Indianapolis, Arizona, and Florida. Although such testimony would be consistent with the conclusion that Jackson is T.J.'s biological father, it does not prove such a relationship; it is equally consistent with and does not exclude the conclusion that Jackson is T.J.'s adoptive father.

The State did not establish that Jackson was biologically related to T.J.; indeed, the issue of biological relationship between the two was never raised. The only reference to a biological relationship is State's exhibit 6 entitled "Application for Benefits from the Sex Crime Victim Services Fund." This document lists the "suspect" as Leon Jackson and answers the question "Does patient/victim know suspect(s)?" with "yes/biological father." *Record* at 215. The State contends that this statement is sufficient evidence of a biological relationship. This evidence, however, is an unverified statement made by an unnamed declarant and it has no probative value.

I believe that the evidence was insufficient to prove beyond a reasonable doubt that Jackson was biologically related to T.J. and, accordingly, insufficient to support Jackson's conviction.

I would reverse the decision of the trial court.