**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Apr 30 2012, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**DAVID A. BROOKS**
**LOIS JONES HOLIDAY**
Brooks Law Office, P.C.
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODNEY D. CRAFT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 66A03-1104-CR-145 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PULASKI CIRCUIT COURT
The Honorable Michael A. Shurn, Judge
Cause No. 66C01-0808-FB-10

**April 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Rodney D. Craft ("Craft") appeals his convictions for Possession of Reagents and Precursors with Intent to Manufacture a Controlled Substance[1], Possession of Methamphetamine[2], and Possession of Cocaine[3], all as Class D felonies.

We affirm.

**Issues**

Craft raises numerous issues for our review, which we restate as:

I. Whether the trial court improperly denied Craft's motion for discharge under Criminal Rule 4(C);

II. Whether there was sufficient evidence to support the convictions; and

III. Whether the trial court abused its discretion by admitting testimony regarding prior acts because such evidence was inadmissible under Evidence Rule 404(b).

**Facts and Procedural History**

During August 2008, Craft was living in a trailer in Pulaski County with his girlfriend, Kathryn Norem ("Norem"), and their infant daughter. Police and the Pulaski County Department of Child Services ("DCS") had received anonymous reports that Craft and others were manufacturing methamphetamine in or near the home. Acting on this information, on August 14, 2008, Pulaski County Sheriff's Deputy Frederick Rogers ("Deputy Rogers") accompanied two DCS caseworkers and Jason Shideler ("Shideler"), an investigator for the Pulaski County Prosecutor's Office, to Craft's and Norem's home.

---

[1] Ind. Code § 35-48-4-14.5(e).
[2] I.C. § 35-48-4-6.1(a).
[3] I.C. § 35-48-4-6(a).

When police and DCS arrived, Craft was not present, but Norem was home with their daughter. Norem admitted DCS and police officials. After initially denying any drug activity had occurred at the home, Norem eventually admitted that such activity had been occurring and retrieved a black bag that belonged to Craft and contained pseudoephedrine tablets and lithium batteries, items that are frequently used in the manufacture of methamphetamine. Norem had purchased some of these items for Craft in the past and other individuals had brought Craft some of these items; taken all together, the pills recovered from Craft's and Norem's trailer contained 32,800 milligrams of pseudoephedrine. (Tr. 257.) Norem had also purchased camping fuel for Craft on one or two occasions; such fuel is also used for manufacturing methamphetamine.

Also while DCS and police were present at the home, Norem went into another room of the house and retrieved two tubes from tire pressure gauges. The ends of the tubes had been cut off and the tubes emptied, and one of the two tubes had gold wire in it. Norem and Craft had used these tubes to consume methamphetamine and cocaine.

Deputy Rogers and Indiana State Police Detective Aaron Campbell ("Detective Campbell") collected, inventoried and preserved evidence, and disposed of methamphetamine waste found in and around the trailer. Outside the home were burn piles in which waste from the methamphetamine manufacturing process was burned. Among the supplies retrieved from inside and outside the home were additional cans of camping fuel, empty blister packs that had once contained tablets with pseudoephedrine, fire extinguishers that contained anhydrous ammonia, unusually large quantities of salt, coffee filters, a plastic

3

jug, glassware, a digital scale, a blender used to crush pseudoephedrine pills, and a punctured aerosol can. All of these supplies are used to manufacture methamphetamine. In addition, a container with a white-and-pink sludge was found; the sludge tested positive for pseudoephedrine.

That same day, Pulaski County Sheriff's deputies arrested two of Craft's neighbors. One of these, Lacy Miller ("Miller"), worked with Craft to manufacture methamphetamine on multiple occasions between May and August 2008. Norem was arrested and charged at a later date.

On August 26, 2008, Craft was charged with Dealing in Methamphetamine, as a Class B felony; Possession of Chemical Reagents or Precursors with Intent to Manufacture a Controlled Substance, as a Class D felony; Maintaining a Common Nuisance, as a Class D felony; and Dumping Controlled Substance Waste, as a Class D felony. On August 27, 2008, Craft was arrested in Knox, Indiana, pursuant to an arrest warrant issued that day.

An initial hearing on the charges was conducted on September 16, 2008. On September 29, 2008, the State filed an amended charging information, which added a fifth count for Neglect of a Dependent, as a Class D felony.

On April 6, 2009, the trial court entered an order scheduling the case for jury trial on August 19, 2009, within 365 days of both the filing of the initial charging information and Craft's arrest. After a pre-trial conference on July 13, 2009, the trial court confirmed that a jury trial would be conducted from August 17, 2009, through August 19, 2009, and set a cutoff date of July 24, 2009, for entry of a plea.

On July 27, 2009, three days after the cutoff date specified in the pre-trial order, Craft notified the trial court that a plea agreement had been reached. The trial court therefore vacated the trial dates. On August 17, 2009, the parties appeared before the trial court and agreed that, even though a presentence investigation report had been completed, they would not enter a plea in order to allow Craft "to explore work release." (App. 6.) The trial court scheduled a status conference for September 21, 2009, at which Craft notified the court that he was "still getting more information on work release." (App. 6.) The court therefore reset the status conference to October 8, 2009, and charged the delay to Craft.

On September 29, 2009, Craft filed a motion to continue the October 8, 2009, status hearing, due to a scheduling change affecting Craft's trial counsel, Martin Bedrock ("Bedrock"). The trial court granted the motion, to which the State did not object, and rescheduled the status hearing to October 20, 2009. At the October 20, 2009, hearing, the Court scheduled a pre-trial conference for November 3, 2009.

During the pre-trial conference on November 3, 2009, Craft and the State entered into and submitted a plea agreement to the trial court. The trial court scheduled an entry of plea hearing for January 18, 2010. At the January 18, 2010, hearing, the trial court reviewed and rejected the plea agreement. In its order after the hearing, the trial court found congestion on its calendar and therefore set the case for jury trial on June 2 and 3, 2010, with an option (to which Craft objected) to proceed on March 3 and 4, 2010, in the event those dates became available. The trial court also set a pre-trial conference for January 28, 2010. At a pre-trial conference on January 28, 2009, the trial court struck the March 3 and 4, 2010, secondary

5

trial dates.

On March 5, 2010, Bedrock moved to withdraw from his representation of Craft because Craft had lost his job and could no longer afford to pay for private counsel. On March 16, 2010, a hearing was held at which the trial court granted Bedrock's motion. Craft requested court-appointed counsel, and the trial court appointed Bedrock as counsel for Craft. The trial court also vacated the trial dates of June 2 and 3, 2010, rescheduled the trial to July 14, 15, and 16, 2010, and charged the delay to Craft; Craft concurred with the new trial dates.

On March 29, 2010, Craft filed a motion to discharge him under Criminal Rule 4, contending that more than one year had passed from the later of Craft's arrest or his initial hearing and that only about 1 ½ months of that time were properly chargeable to him. Craft amended his motion on April 26, 2010, to reflect additional periods of delay that the trial court had charged to him. Craft still argued that much of the delay was not properly chargeable against him and that he therefore was entitled to a discharge. On April 29, 2010, the trial court denied the motion.

On May 25, 2010, a pre-trial conference was conducted, at which the trial court confirmed trial dates of July 15 and 16, 2010, and required the parties to submit any further pre-trial motions within ten days of the order.

On July 12, 2010, Craft moved the court to continue the trial from its July 15 and 16, 2010, dates "for the reason that counsel is not prepared to go to trial at this time because defendant has not cooperated with counsel." (App. 92.) The trial court granted Craft's motion that day.

6

On July 15, 2010, the trial court held a status hearing, at which it set the case for trial on January 11 and 12, 2011. The trial court made no statement in its order or in the Chronological Case Summary ("CCS") about court congestion.

On January 3, 2011, the State amended the charging information, dismissing most charges and leaving only the charges for Possession of Chemical Reagents or Precursors with Intent to Manufacture a Controlled Substance, and Possession of Methamphetamine. On January 5, 2011, the State again amended the charging information, this time adding a charge of Possession of Cocaine, as a Class D felony. On January 5, 2011, the trial court held an initial hearing on the amended charges, at which Craft again pled not guilty to all the charges.

On January 6, 2011, the State again amended the charging information, this time more specifically identifying the items associated with the charge for Possession of Chemical Reagents or Precursors.

A jury trial was conducted on January 11 and 12, 2011, at the conclusion of which Craft was found guilty of Possession of Chemical Reagents or Precursors, Possession of Methamphetamine, and Possession of Cocaine. On March 15, 2011, the trial court entered judgments of conviction against Craft and sentenced him to two years imprisonment for Possession of Chemical Reagents or Precursors, one year of imprisonment for Possession of Methamphetamine, and one year of imprisonment for Possession of Cocaine, with the sentences run consecutively, for an aggregate term of imprisonment of four years.

This appeal followed.

7

## Discussion and Decision

### Discharge under Criminal Rule 4(C)

We first address Craft's contention that the trial court should have granted his motion for discharge under Criminal Rule 4(C), which we review for an abuse of discretion. <u>Curtis v. State</u>, 948 N.E.2d 1143, 1149 (Ind. 2011). Rule 4(C) provides, in relevant part, that "[n]o person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later," and provides that under such circumstances the defendant may be discharged. Ind. Crim. Rule 4(C). The rule excepts from the calculation of the one-year period delays that occur because the defendant moved for a continuance that the trial court grants, a defendant's act, or court congestion. <u>Id.</u> This has the effect of extending the date by which a defendant must be tried under the rule. <u>Curtis</u>, 948 N.E.2d at 1150 (citing Crim. R. 4(C) & (F)) (characterizing this as "tacking on additional time to the one-year period and excluding days from the one-year period").

A defendant's acts extend the one-year period under the Rule where those acts are "inconsistent with being brought to trial by the trial date or within one year." <u>State v. Suggs</u>, 755 N.E.2d 1099, 1103 (Ind. Ct. App. 2001). Among the delays that Indiana courts have held are among a defendant's acts for purposes of Rule 4(C) are such "affirmative steps" as signing a plea agreement and requesting continuances. <u>Id.</u> Engaging in informal plea negotiations does not result in time chargeable to a defendant unless that "caused an actual

8

delay in the scheduling of his trial." Miller v. State, 650 N.E.2d 326, 329 (Ind. Ct. App. 1995), trans. denied. We have held, however, that informing the trial court that a plea agreement has been reached does constitute a delay chargeable to the defendant when that conduct "would have [made it] futile" to try the defendant. Id. "'When a record is silent concerning the reason for a delay, it is not attributable to the defendant.'" Suggs, 755 N.E.2d at 1103 (quoting Havvard v. State, 703 N.E.2d 1118, 1121 (Ind. Ct. App. 1999)).

Here, Craft and the State dispute which delays were due to Craft's acts and thus fall within the exceptions to Rule 4(C).[4] The State contends that 333 days may be properly attributed to the 365-day period provided by Rule 4(C); Craft argues that 390 days fall within the Rule period. The dispute centers on the time from July 27, 2009, and September 21, 2009, during which the parties informed the trial court that a plea agreement had been reached and Craft engaged in research on work release programs. The trial court did not expressly charge Rule 4(C) time to Craft until September 21, 2009, when the trial court charged a subsequent delay to Craft but was silent as to any prior time. Craft would attribute this period, which amounts to fifty-six days, to the Rule; the State argues this time should be charged against Craft.

Our review of the record shows that Craft informed the trial court of the plea agreement on July 27, 2009 (three days after the trial court's deadline of July 24 for entry of a

---

[4] The State argues that Craft has waived our consideration of this issue on appeal for failure to make cogent argument with citation to the record and authority as required by Appellate Rule 46(A)(8). The nature of the disagreement between Craft and the State is sufficiently clear for us to render a decision here, and in light of our preference to decide matters on their merits, Lindsey v. De Groot Dairy, LLC, 867 N.E.2d 602, 605 (Ind. Ct. App. 2007), trans. denied, we address the merits of the case.

9

plea) when the case was set for trial on August 17, 2009. The trial court ordered the parties to appear on that date to conduct an entry of plea hearing. Thus, as in Miller, Craft had informed the trial court that he had reached a plea agreement with the State, which resulted in a delay of the trial because it would have been futile to try Craft during the pendency of the plea agreement. Cf. Miller, 650 N.E.2d at 329.

Twenty-one days later, on August 17, 2009, the parties appeared before the trial court. The trial court's CCS entry indicates that the parties had agreed "not to go forward on entry of plea hearing" and that Craft had requested "more time to explore work release." (App. 6.) The trial court thus scheduled a status hearing for September 21, 2009, at which time the CCS reflects that Craft again indicated that he was "still getting more information on work release." The trial court stated that "[d]elay is charged to the defendant," though the CCS entry does not indicate whether the court was charging all delay from July 27, 2009 to Craft, or only the delay from September 21, 2009 onward. (App. 6.) Craft would have us conclude that the latter is the case.

We do not agree, and conclude that the entirety of the delay between the announcement of a plea agreement and January 18, 2010, when the trial court rejected the plea agreement, was properly chargeable to Craft. Craft did not merely engage in informal negotiations, but rather joined with the State in informing the trial court that a plea agreement had been reached. Craft then agreed not to proceed with entry of a plea on August 17, 2009, in order to seek out alternative placements for serving his sentence, a process that extended beyond the September 21, 2009, hearing.

10

Given Craft's initiation of the (ultimately rejected) plea agreement and subsequent delay to explore work release, we cannot conclude that the trial court improperly denied Craft's motion for a discharge under Rule 4(C).

Sufficiency of the Evidence

Craft also contends that there was insufficient evidence upon which a reasonable jury could find him guilty of Possession of Chemical Reagents or Precursors, Possession of Methamphetamine, and Possession of Cocaine. This argument takes two forms: first, that there was insufficient evidence from which to conclude that he constructively possessed these substances; and second, that Norem's and Miller's testimonies were incredibly dubious.

*Constructive Possession*

Our standard of review in sufficiency matters is well-settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

Here, Craft was convicted of Possession of Chemical Reagents with Intent to Manufacture a Controlled Substance, Possession of Methamphetamine, and Possession of Cocaine, each as a Class D felony. In order to obtain a conviction against Craft for

11

Possession of Chemical Reagents with Intent to Manufacture a Controlled Substance, as alleged, the State was required to prove beyond a reasonable doubt that Craft possessed two or more chemical reagents or precursors, specifically, pseudoephedrine and/or camp fuel, with the intent to manufacture methamphetamine. I.C. § 35-48-4-14.5(e); App. 126. In order to convict Craft of Possession of Methamphetamine, the State was required to prove beyond a reasonable doubt that Craft knowingly or intentionally possessed methamphetamine, whether pure or adulterated. I.C. § 35-48-4-6.1(a); App. 126. In order to convict Craft of Possession of Cocaine, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally possessed cocaine. I.C. § 35-48-4-6(a); App. 127.

Craft was not present when police obtained the tubes with methamphetamine and cocaine residue and the various precursors, including pseudoephedrine and camp fuel, from the trailer Craft and Norem shared. Thus, the State was required to prove that Craft had constructive possession over these items. Constructive possession occurs when an individual "'has direct physical control over the item.'" Massey v. State, 816 N.E.2d 979, 989 (Ind. Ct. App. 2004) (quoting Henderson v. State, 715 N.E.2d 833, 835 (Ind. 1999)). "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." Iddings v. State, 772 N.E.2d 1006, 1015 (Ind. Ct. App. 2002), trans. denied.

"The State must demonstrate the defendant's knowledge of the presence of the contraband to prove the intent element." Grim v. State, 797 N.E.2d 825, 832 (Ind. Ct. App.

12

2003). Where the defendant has possession of the premises where contraband is discovered, but that possession is not exclusive, the defendant's knowledge may be inferred from additional circumstances, and he must be "able to reduce the controlled substance to his personal possession." Id. "In a manufacturing type [sic] setting, a defendant's presence does not compel a conviction but it does present a prima facie case of possession." Moore v. State, 613 N.E.2d 849, 851 (Ind. Ct. App. 1993). Additional circumstances that Indiana courts have found to support an inference that a defendant had "'knowledge of the nature of the controlled substances and their presence,'" Gee v. State, 810 N.E.2d 338, 341 (Ind. 2004) (quoting Lampkins v. State, 682 N.E.2d 1268, 1275 (Ind. 1997), modified on reh'g, 685 N.E.2d 698 (Ind. 1997)), include:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

Id.

As to possession of precursors and reagents, while in the residence she and Craft shared, Norem gave Deputy Rogers a black neoprene bag that contained pseudoephedrine and lithium batteries, both of which are used to produce methamphetamine. Norem testified that these items—in particular the pseudoephedrine tablets—were dropped off at the residence for Craft by numerous individuals. She also testified that she had purchased camp fuel for methamphetamine production at Craft's request. Norem testified that she did not know how to produce methamphetamine, but she had assisted Craft in the manufacturing

13

process at some point in the past by grinding pseudoephedrine pills in a blender and was aware that methamphetamine precursors were present in the home.

Norem's testimony was confirmed by Miller's statements to Shideler during a recorded interview Shideler conducted with Miller. The recording was played for the jury and introduced into evidence during the trial without objection from Craft. During that interview, Miller stated that he and Craft had planned to make methamphetamine on the night of August 14, 2008. Miller further testified that Norem and others obtained supplies for Craft's use in manufacturing methamphetamine, including pseudoephedrine and camp fuel.

In addition, Deputy Rogers and Detective Campbell found cans of camp fuel in the back of Craft's truck. Also found on the premises were fire extinguishers that had contained anhydrous ammonia, which is another reagent used in the manufacture of methamphetamine. All this is sufficient to support Craft's conviction for Possession of Precursors and Reagents.

As to possession of methamphetamine and cocaine, Norem provided two tubes that tested positive for methamphetamine and cocaine residue. At trial, Norem testified that she and Craft had used methamphetamine and cocaine several times after moving into the trailer in May 2008, Craft supplied her with the drugs, and Miller had used methamphetamine with her and Craft on at least one occasion. Miller told Shideler that he and Craft had previously made methamphetamine together, Craft had sold some of what they made, and that he thought Craft had used some portion of the drugs. Thus, there is sufficient evidence to support Craft's convictions for possession of methamphetamine and cocaine.

14

*Incredible Dubiosity*

Craft also contends that the testimony offered by Norem and Miller was incredibly

dubious. Our supreme court has stated the standard for incredible dubiosity:

> Under the incredible dubiosity rule, a court will impinge on a jury's
> responsibility to judge witness credibility only when confronted with
> inherently improbable testimony or coerced, equivocal, wholly uncorroborated
> testimony of incredible dubiosity. Tillman v. State, 642 N.E.2d 221, 223 (Ind.
> 1994). The incredible dubiosity rule, however, is limited to cases where a sole
> witness presents inherently contradictory testimony which is equivocal or the
> result of coercion <u>and</u> there is a complete lack of circumstantial evidence of
> the defendant's guilt. Id.

Majors v. State, 748 N.E.2d 365, 367 (Ind. 2001) (emphasis supplied). "The incredible

dubiosity rule applies to conflicts in trial testimony rather than conflicts that exist between

trial testimony and statements made to the police before trial." Buckner v. State, 857 N.E.2d

1011, 1018 (Ind. Ct. App. 2006) (citing Reyburn v. State, 737 N.E.2d 1169, 1171 (Ind. Ct.

App. 2000)). For testimony to be so incredibly dubious as to warrant reversal of a conviction

or delinquency adjudication, the single witness's testimony must be coerced or "inherently

improbable [so] that no reasonable person could believe it." Love v. State, 761 N.E.2d 806,

810 (Ind. 2002).

Here, there were multiple witnesses to the alleged offenses—Norem and Miller. Craft

points to conflicts between Norem's and Miller's trial testimonies and their statements to

police, investigators, and in court on other occasions, but these conflicts do not fall within the

15

incredible dubiosity rule.[5]  Nor is there a complete absence of circumstantial evidence of guilt.  We therefore conclude that the testimony provided by Norem and Miller was not incredibly dubious.

Evidence of Prior Bad Acts under Evidence Rule 404(B)

Craft further contends that certain testimony was inadmissible under Evidence Rule 404(B) as evidence of prior bad acts that prejudiced him before the jury.  We review a trial court's rulings on the admission or exclusion of evidence for an abuse of discretion.  An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it, or where the trial court misinterprets the law.

Only relevant evidence is admissible at trial.  Evid. R. 402.  Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid. R. 401.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  Evid. R. 403.  Further, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," though it may be introduced for other purposes.  Evid. R. 404(b).

When reviewing the admissibility of evidence under Rule 404(b), the trial court must

---

[5] Miller's testimony at trial was brief, and largely consisted of denials of knowledge of any use or manufacture of methamphetamine or other drugs in or near Craft's home and denials of cooperating with Craft in making or using such drugs, with the exception of his own conduct.

determine whether the prior conduct is relevant to a matter other than the defendant's propensity to commit the charged act, and balance the probative value of that evidence with its prejudicial effect under Rule 403. Edwards v. State, 862 N.E.2d 1254, 1261 (Ind. Ct. App. 2007), trans. denied. "Rule 404(b) is on the books because evidence of prior crimes is presumptively prejudicial." Thompson v. State, 690 N.E.2d 224, 226 (Ind. 1997). Nonetheless, harmless error analysis applies, and where there is substantial independent evidence of guilt from which a jury could convict the defendant, we will not reverse the judgment. Burks v. State, 838 N.E.2d 510, 520 (Ind. Ct. App. 2005), trans. denied. Moreover, "timely and accurate admonishment is presumed to cure any error in the admission of evidence," and there is seldom reversible error when the trial court properly admonishes the jury to disregard an inadmissible statement made at trial. Owens v. State, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010) (quoting Warren v. State, 757 N.E.2d 995, 999 (Ind. 2001); Lay v. State, 659 N.E.2d 1005, 1009 (Ind. 1995)), trans. denied.

Here, Craft points to three occasions at trial that he asserts violated Rule 404(B). Each of these involved a witness stating that Craft had been in jail at some point. Norem twice mentioned that Craft had been imprisoned in the past. In one of these instances, she stated, "I think I got pregnant with my daughter three (3) years after [Craft] got out of Saint Joe County Jail." (Tr. 140.) In the other instance, Norem testified that Craft "was in prison when I had my daughter." (Tr. 165.) In addition, Detective Campbell, who assisted in cleaning up methamphetamine waste from the land around Craft's trailer, testified that he had spoken with Craft on one occasion "because … to the best of my recollection I believe he

17

was recently out of incarceration." (Tr. 284.)

In each of these instances, Craft timely objected, and the trial court sustained each objection, thereby excluding the statements from admission into evidence. On two of these occasions, the trial court directly instructed the jury to disregard the answers given. Further, the trial court instructed the jury in both preliminary and final jury instructions to disregard evidence that had been stricken from the record. Moreover, as we have already held above, there was substantial evidence of Craft's guilt independent of the fact of his prior imprisonment. Thus, Craft has failed to establish any error, and at worst, any error was harmless.

## Conclusion

The trial court did not abuse its discretion when it denied Craft's motion for discharge under Criminal Rule 4(C). There was sufficient evidence to sustain Craft's convictions. Finally, the trial court properly admonished the jury to disregard the three statements regarding Craft's prior imprisonment, and any error that may have arisen from such statements was harmless.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.

18