**Rene MAJORS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49S00–0004–CR–254.

Supreme Court of Indiana.

June 6, 2001.

Katherine A. Cornelius, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

Following a jury trial, Rene Majors was convicted of murder and robbery in connection with the beating death of her eighty-four-year-old former landlord Roberta Higginson. In this direct appeal, Majors raises two issues for our review: (1) is the evidence sufficient to support her murder conviction; and (2) did the trial court err by allowing into evidence testimony concerning an incident that occurred between Mrs. Higginson and Majors two days before the murder.

The evidence is sufficient and finding no error, we affirm the trial court.

### Facts

The facts most favorable to the verdict show that in the early morning hours of May 15, 1998, Majors approached William Rivers at an Indianapolis liquor store and told him that she wanted to "get high," but she did not have any money. R. at 286. Majors said that she was going to the home of Roberta Higginson, her eighty-four-year-old former landlord, "to get some money." R. at 286. She invited Rivers to go with her, and he agreed. When they arrived at Mrs. Higginson's home, she let them both inside. Majors talked with Mrs. Higginson in the living room, and after some time had passed, Majors picked up a beer stein and struck Mrs. Higginson in the head three or four times. Majors then stated that Mrs. Higginson had "a lot of money and guns" in the house, and Rivers responded that they should "get them and get out." R. at 290.

Rivers left the living room in search of guns. When he returned he saw Majors strike Mrs. Higginson in the head with a walking cane five or six times while Mrs. Higginson was sitting in a chair. Mrs. Higginson fell out of the chair onto the floor, and Majors kicked her. Majors and Rivers took a blue suitcase, strongbox, money, shotgun shells, and two guns from Mrs. Higginson's home. They then sold the guns and used the proceeds to purchase crack cocaine.

Later that morning, Majors and Rivers returned to Mrs. Higginson's home to re-

trieve a hat and hairpiece they had left behind. Mrs. Higginson was still lying on the floor by the chair. Majors and Rivers moved Mrs. Higginson's body to the basement steps. A subsequent autopsy revealed that Mrs. Higginson died from multiple blunt force injuries to the head.

A jury convicted Majors of murder, felony murder, and robbery. The trial court vacated the felony murder conviction. The trial court then ordered Majors to serve consecutive sentences of sixty-five years for the murder conviction and eight years for the robbery conviction. This direct appeal followed. Additional facts are set forth below where relevant.

### Discussion

### I.

■ Majors first contends the evidence is insufficient to support her conviction for murder. More specifically, she complains that the testimony of William Rivers, the only eyewitness to the event, was incredibly dubious given "his attitude regarding prison time, his career as a professional liar and the manner in which his memory improved after having access to crime scene photos and the probable cause affidavit." Br. of Appellant at 22. Under the incredible dubiosity rule, a court will impinge on a jury's responsibility to judge witness credibility only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994). The incredible dubiosity rule, however, is limited to cases where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion *and* there is a complete lack of circumstantial evidence of the defendant's guilt. *Id.*

■ In this case, there is circumstantial evidence of Majors' guilt. The police found Majors' fingerprints in Mrs. Higginson's home. R. at 585, 589. Further, the police found two blue suitcases, one of which had the name "R. Higginson" tagged onto it, and a pair of black sweatpants [1] stained with blood in the basement of Majors' mother's house. R. at 553–54, 739–41. Subsequent DNA testing revealed that the blood on the sweatpants was that of Mrs. Higginson. R. at 711. Because circumstantial evidence of Majors' guilt exists, her reliance on the incredible dubiosity rule is misplaced. *See White v. State*, 706 N.E.2d 1078, 1080 (Ind.1999) (holding that the incredible dubiosity rule did not apply because there was circumstantial evidence of the defendant's guilt, namely, his shirt and bandana were found near the crime scene). As such, no basis for applying this rule exists, and Majors' request simply amounts to an invitation for us to reweigh the evidence, which we will not do.

### II.

■ Next, Majors contends the trial court erred by allowing into evidence testimony concerning an incident that occurred between her and Mrs. Higginson two days before the murder. Officer Marvin Barlow of the Indianapolis Police Department testified to the following events at trial: on May 13, 1998, he was called to Mrs. Higginson's home; when he arrived, Mrs. Higginson was in her front yard screaming and waving a gun; he calmed Mrs. Higginson down and took the gun from her; Mrs. Higginson told him that Majors had been living with her three weeks but had not paid any rent and she wanted Majors to leave; Majors, who was crying and sitting on Mrs. Higginson's front porch with her belongings, confirmed that

---

1. Rivers testified that Majors wore a "black jogging suit" during the crime. R. at 361.

she had not paid any rent; and he helped Majors move her belongings to another person's house. R. at 184–89. Majors contends that Officer Barlow's testimony is inadmissible because it is irrelevant and unduly prejudicial. The State, on the other hand, maintains that Officer Barlow's testimony is admissible to show Majors' motive.

■ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Generally speaking, relevant evidence is admissible, and irrelevant evidence is inadmissible. Evid.R. 402. "[E]vidence of motive is always relevant in the proof of a crime." *Cook v. State*, 734 N.E.2d 563, 567 (Ind.2000), *reh'g denied.* However, relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403.

Majors argues that Officer Barlow's testimony is irrelevant because "[Mrs. Higginson's] threat against Ms. Majors did not establish a motive for any future conduct." Br. of Appellant at 10. We disagree. Rivers testified at trial that after he and Majors left Mrs. Higginson's home the first time, he asked Majors why she killed Mrs. Higginson. When asked what Majors' response to his question was, Rivers testified to the following:

> She [Majors] said her and [Mrs.] Higginson had gotten into it about three days earlier and that [Mrs.] Higginson had pulled a gun on her and stuck the gun in her mouth and made her crawl around on the floor for about an hour until she was able to convince [Mrs.] Higginson to call the police and the police came and escorted Rene from [Mrs.] Higginson's house and took uh—the gun from [Mrs.] Higginson.

R. at 303. Officer Barlow's testimony relates to this same event and takes up, in more detail, where Mrs. Higginson called the police. Together, this evidence makes it more probable that Majors robbed and killed Mrs. Higginson in retaliation for Mrs. Higginson's aggression two days before the murder.

■ Additionally, Majors argues that even if Officer Barlow's testimony is relevant, it is unfairly prejudicial because "the jury was allowed to consider her to be a shiftless, irresponsible sort of person." Br. of Appellant at 16–17. Again we disagree. Officer Barlow's testimony focused primarily, if not exclusively, on Mrs. Higginson's prior misconduct. Majors even seems to admit as much, stating in her brief that "[t]he incident really did not involve any 'bad act' by Ms. Majors, since the evidence merely showed she was Mrs. Higginson's victim." Br. of Appellant at 9. Thus, the probative value of Officer Barlow's testimony was not substantially outweighed by the danger of unfair prejudice.

■ The decision to admit evidence is within the sound discretion of the trial court, and its decision is afforded a great deal of deference on appeal. *Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997). We will only reverse a trial court upon a showing that the trial court manifestly abused its discretion and the defendant was denied a fair trial. *Henderson v. State*, 455 N.E.2d 1117, 1119 (Ind.1983). There was no abuse of discretion here.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

BOEHM, J., concurs in result.