ATTORNEYS FOR APPELLANTS
James H. Voyles
Tyler D. Helmond
Voyles Zahn Paul Hogan & Merriman
Indianapolis, Indiana

Alan D. Burke
Burke Law Office
Rochester, Indiana

Jeremy N. Gayed
Michael H. Michmerhuizen
Barrett & McNagny LLP
Fort Wayne, Indiana

R.P. Fisher
Fisher & Ireland
Wabash, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General

Andrew A. Kobe
Deputy Attorney General
Indianapolis, Indiana



FILED

Sep 13 2012, 8:33 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

_____

No. 35S02-1112-CR-704

AN-HUNG YAO AND YU-TING LIN,

*Appellants-(Defendants below),*

v.

STATE OF INDIANA,

*Appellee-(Plaintiff below).*

_____

Interlocutory Appeal from the Huntington Circuit Court
Nos.   35C01-1001-FC-12
35C01-1001-FC-16
The Honorable Thomas M. Hakes, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 35A02-1006-CR-678

_____

**September 13, 2012**

**Rucker, Justice.**

**Case Summary**

Associated with a toy gun business, Defendants were charged with counterfeiting, theft, and corrupt business influence arising out of their conduct concerning toy semi-automatic weapons that were look-alikes of real weapons for which a gun manufacturer allegedly owned a federally protected trademark. Defendants moved to dismiss the charges; the trial court granted their motion with respect to counterfeiting on grounds that the facts alleged did not constitute an offense. On interlocutory review the Court of Appeals concluded that all charges should be dismissed on grounds that Indiana lacked jurisdiction. Disagreeing with our colleagues on this point, we affirm in part and reverse in part the judgment of the trial court.

**Facts and Procedural History**

Yu-Ting Lin operates Generation Guns, a Houston, Texas based business, which imports from Taiwan and sells in this country certain products it labels as "airsoft guns."[1] An-Hung Yao, vice-president of a bank in Houston, is a friend of Lin's and has helped her by setting up bookkeeping and computer systems for Lin's business, and by attending trade shows with her. As part of an investigation into potential trademark infringements, firearms manufacturer Heckler & Koch, Inc. ("H & K"), through a private consulting firm and in cooperation with the Indiana State Police, ordered airsoft guns from Generation Guns. H & K directed that the toy guns be shipped to an address in Huntington County, Indiana. Lin, Yao, or both were allegedly involved in the process of receiving the order, accepting payment, and effecting shipment of the airsoft guns. On the basis of H & K's verification that the toys delivered to Huntington County were replicas of H & K's real weapons, the Huntington County Prosecutor charged Lin and Yao with three counts each of Class D felony theft and Class D felony counterfeiting, and one count each of Class C felony corrupt business influence.

---

[1] "Airsoft" guns are described as toy replicas that look like real guns, but shoot lightweight plastic pellets instead of metal BBs or live ammunition. See, e.g., State v. Jasso, 273 P.3d 309, 309 n.1 (Or. Ct. App. 2012); People v. Glenn, 814 N.W.2d 686, 688 n.1 (Mich. Ct. App. 2012).

Lin and Yao (collectively, the "Defendants") moved to dismiss all charges against them. Defendants contended the facts cannot constitute the offense of theft because one cannot exert unauthorized control over a trademark. Because the corrupt business influence charges were predicated on the theft counts,[2] the Defendants argued for their dismissal on the same basis. With respect to the charge of counterfeiting the Defendants contended the facts alleged cannot constitute the crime of counterfeiting because an airsoft gun is not a written instrument within the meaning of the counterfeiting statute. As to all charges Lin, but not Yao, also argued dismissal was required because Indiana lacked jurisdiction over the alleged offenses.[3] The trial court entered an order granting the Defendants' motions to dismiss the counterfeiting charges but denied the Defendants' motions to dismiss the theft and corrupt business influence charges. The trial court made no express ruling concerning Lin's jurisdictional argument. See Appellant Lin's App. at A090-091. The trial court also certified its order for interlocutory appeal; the Defendants separately appealed and the State cross-appealed.

After accepting jurisdiction and consolidating the Defendants' appeals, the Court of Appeals concluded that all charges should have been dismissed on grounds "the trial court lacked territorial jurisdiction because there is no evidence any conduct that is an element of the alleged offenses occurred in Indiana." Yao v. State, 953 N.E.2d 1236, 1237 (Ind. Ct. App. 2011). The State sought transfer, which we granted. See App. Rule 58(A). Additional facts are set forth below where necessary.

---

[2] As applicable to the Defendants in this case the statute provides in relevant part:

> A person . . . who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity; commits corrupt business influence, a Class C felony.

Ind. Code § 35-45-6-2(3). As charged here "Racketeering activity" means "to commit" or "to attempt to commit" theft. See I.C. § 35-45-6-1(e)(14).

[3] Although he did not raise it before the trial court, Yao adopted this argument on appeal. As did the Court of Appeals, we decline to find waiver. We summarily affirm this aspect of the court's opinion.

**Standard of Review**

We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. State v. Davis, 898 N.E.2d 281, 285 (Ind. 2008). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." Hoglund v. State, 962 N.E.2d 1230, 1237 (Ind. 2012). A trial court also abuses its discretion when it misinterprets the law. State v. Econ. Freedom Fund, 959 N.E.2d 794, 800 (Ind. 2011).

**Discussion**

On motion by a defendant Indiana law permits dismissal of a charging information on a number of grounds. See I.C. § 35-34-1-4. The Defendants here set forth two grounds for dismissal of the charges: one, dismissal is proper because "[t]he facts stated do not constitute an offense," I.C. § 35-34-1-4(a)(5) and two, "[t]here exists some jurisdictional impediment to conviction of the defendant for the offense charged." I.C. § 35-34-1-4(a)(10). We address the jurisdictional claim first.

*A.    Territorial Jurisdiction*

Indiana Code section 35-41-1-1(b) provides "[a] person may be convicted under Indiana law of an offense if: (1) either the conduct that is an element of the offense, the result that is an element, or both, occur *in Indiana*." (emphasis added). The Defendants argue the trial court lacks jurisdiction over this prosecution because neither the "conduct that is an element of" nor "the result that is an element" of the charged offenses occurred in Indiana. Br. in Opposition to Trans. at 10-11.

We first observe that Indiana statutes do not list jurisdiction as an element of the offenses for which these Defendants are charged. Nonetheless "[t]he plain, ordinary, and usual meaning of [I.C. § 35-41-1-1] clearly establishes 'in Indiana' as a prerequisite for Indiana criminal prosecutions and thus restricts the power to exercise criminal jurisdiction to Indiana's actual

4

territorial boundaries." Benham v. State, 637 N.E.2d 133, 137 (Ind. 1994). Consequently, this Court treats territorial jurisdiction as though it were an element of an offense and has held that the State must prove this element "beyond a reasonable doubt." Ortiz v. State, 766 N.E.2d 370, 375 (Ind. 2002). Precisely because this is so "the issue must be submitted to the jury unless the court determines no reasonable jury could fail to find territorial jurisdiction beyond a reasonable doubt." Id. (quoting McKinney v. State, 553 N.E.2d 860, 863-64 (Ind. Ct. App. 1990)). If the court makes such a determination then no jury instruction on the issue is required and the question of jurisdiction is decided by the court as a matter of law. However, at this preliminary stage of the proceedings with only arguments of counsel informing the trial court's decision, the basis of finding a lack of jurisdiction is necessarily constrained. And appellate review is limited to whether the trial court abused its discretion.

With respect to the charge of theft, the conduct prohibited by statute is "exert[ion of] unauthorized control." I.C. § 35-43-4-2. The Defendants argue "[t]he only 'exertion of control' alleged by the State is the sale of airsoft guns." Br. of Lin at 18. We first note that the charging informations – which the Defendants seek to dismiss on jurisdictional grounds – make no allegation concerning sale. Rather they simply track the language of the statute and declare in relevant part:

> Sometime from June 2009 to August 2009, in Huntington County, Indiana, Yu-Ting Lin a/k/a Lin Yu Ting knowingly or intentionally exerted unauthorized control over property belonging to Heckler & Koch, Inc., with the intent to deprive the owner of any part of its value or use, namely: trademarks and/or markings or symbols of identification.

Appellant Lin's App. at A-018-020; see Appellant Yao's App. at 62-64 (identically-worded information charging Yao with theft). Second, contrary to the Defendants' apparent claim, "exertion of control" is not limited to sale. Instead to "exert control" means to "obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." I.C. § 35-43-4-1. If at trial the State fails to prove beyond a reasonable doubt that the Defendants, in Indiana, engaged in any one or more of these several forms of exerting control over the property of Heckler & Koch then the Defendants

will be entitled to acquittal, or perhaps judgment on the evidence. But this is a sufficiency of the evidence determination. At this stage of the proceedings we cannot say as a matter of law that the charging information is jurisdictionally infirm. See, e.g., Benham, 637 N.E.2d at 138 ("[U]pon a motion to dismiss [under I.C. § 35-34-1-4(a)(10)] the defendant is required to prove by a preponderance of the evidence every fact essential to support the motion.") (internal quotation marks omitted).

With respect to the charge of counterfeiting, the conduct prohibited by statute is "mak[ing] or utter[ing]" a written instrument. I.C. § 35-43-5-2(a)(1) (now I.C. § 35-31.5-2-345).[4] Neither defendant makes a specific claim concerning this particular charge. Instead both generally insist that all relevant conduct in this case took place in either Taiwan or the state of Texas, and ground their argument on the meaning of the sale of goods as used in the Uniform Commercial Code. First, similar to "exert control" under the theft statute, "mak[ing] or utter[ing]" under the counterfeiting statute is not limited to the sale of goods. Rather, to "utter" means "to issue, authenticate, transfer, publish, deliver, sell, transmit, present, or use." I.C. § 35-41-1-27. Second, even if the evidence later shows that the Defendants did not "sell" in Indiana property belonging to Heckler & Koch (within the meaning of the criminal statutes), this says nothing about whether the Defendants engaged in other forms of "making or uttering" a written instrument in Indiana.

Consistent with the approach taken by the Court of Appeals in this case, the Defendants also claim there cannot be a more expansive understanding of jurisdiction under the criminal law than under the civil law. See Br. in Opposition to Trans. at 12. We disagree. Writing for a unanimous Supreme Court, Justice Holmes laid down a broad basis for criminal territorial jurisdiction: "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect . . . ." Strassheim v. Daily, 221 U.S. 280, 285 (1911). Further, "the scope of a state's jurisdiction over defendants in criminal cases is bound up with the scope of its substantive criminal law" and criminal jurisdictional doctrine evolved quite independently from

---

[4] Pursuant to Senate Enrolled Act 26 enacted by the Indiana General Assembly in 2012, several Indiana Code criminal law definitions were moved into a new section of the Code. For convenience and clarity, we provide both citations.

6

the doctrine of civil jurisdiction. Allan Erbsen, <u>Impersonal Jurisdiction</u>, 60 Emory L.J. 1, 37 (2010) (listing reasons for analyzing questions of criminal jurisdiction separately from questions of civil jurisdiction). <u>Cf.</u> <u>In re Vasquez</u>, 705 N.E.2d 606, 609 (Mass. 1999) ("The jurisprudence of personal jurisdiction has no bearing on the question whether a person may be brought to a State and tried there for crimes under that State's laws.") Today, criminal jurisdiction is for the most part a creature of expansive state statutes designed in part to permit prosecution for consequences felt within a state resulting from criminal acts occurring outside a state. <u>See</u> Wayne R. LaFave, et al., 4 Criminal Procedure § 16.4(c) at 847-49 (3d ed. 2007).

In sum, we cannot conclude that as a matter of law the Defendants engaged in no conduct nor effected any result in Indiana that was an element of either the theft or the counterfeiting charge. The trial court did not abuse its discretion in denying *sub silentio* Lin's motion to dismiss for lack of jurisdiction.

**B.      *Do the Facts Alleged Constitute the Offense of Counterfeiting?***

The Informations charging the Defendants with counterfeiting allege in relevant part:

> Sometime from June 2009 to August 2009, in Huntington County, Indiana, An-Hung Yao, a/k/a Andy An-Hung Yao, knowingly or intentionally uttered a written instrument, namely: an airsoft gun, in such a manner that it purported to have been made by another person or by authority of one who did not give authority, namely: Heckler & Koch, Inc.

Appellant Yao's App. at 65; <u>see also</u> Appellant Lin's App. A-015-017. Generally contending the State is attempting to criminalize civil trademark infringement, and that an airsoft gun cannot constitute a written instrument, the Defendants moved to dismiss the counterfeiting charges. The trial court granted the motions.

To convict the Defendants of counterfeiting, the State must show they knowingly or intentionally made or uttered a written instrument in such a manner that it purports to have been

7

made by authority of one who did not give authority. See I.C. § 35-43-5-2(a). For purposes of the Indiana counterfeiting statute, "written instrument" is defined as follows:

> "Written instrument" means a paper, a document, or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, retail sales receipts, labels or markings (including a universal product code (UPC) or another product identification code), or other objects or symbols of value, right, privilege, or identification.

I.C. § 35-43-5-1(t).

The Defendants' claim that their airsoft guns cannot constitute a written instrument is premised on their reading of the foregoing statute. In short, according to the Defendants, a written instrument must consist of a "paper, a document, or other instrument containing written matter." As the Defendants see it, the remainder of the statute merely provides examples of instruments containing written matter. In other words, the Defendants contend the "instrument" must contain "written matter" – which could be merely a marking or stamping of some kind – in order to qualify as an object of the counterfeiting statute. And the Defendants appear to argue that because the toy guns obviously are not pieces of paper or documents and contain no written matter, they cannot be counterfeited.[5]

On the other hand the State views the definition of "written instrument" as "a paper, a document, or other instrument containing written matter . . . *or* other objects or symbols of value, right, privilege, or identification." According to the State the phrase "and includes money, coins, . . . labels or markings . . . etc." modifies the term "instrument containing written matter." In other words, a written instrument could be an instrument containing written matter or it could be an object or symbol of value, right, privilege, or identification – whether or not such object or symbol contains any writings or markings.

---

[5] The record is not entirely clear as to whether the airsoft guns "contain[ed] written matter." At the hearing on the Defendants' motions to dismiss, the State argued that no such marking or inscription was necessary because the guns themselves, in their design, constituted "written instruments" under the counterfeiting statute. See Lin's Tr. of Hrg. on Mot. to Dismiss at 31-32. Alternatively, the State argued that the guns did contain such a marking and therefore the guns were "written instruments" if such marking was necessary to make them so. See Lin's Tr. of Hrg. on Mot. to Dismiss at 31-32.

We think the State has the better of the argument. It is true that criminal statutes must be strictly construed against the State, and "may not be enlarged beyond the fair meaning of the language used and . . . held to include offenses other than those clearly defined." Bond v. State, 515 N.E.2d 856, 857-58 (Ind. 1987). However, when the language is susceptible to more than one construction, we must construe the statute in accord with the apparent legislative intent. This is done by "giving effect to the ordinary and plain meaning of the language used in the statute." Clifft v. Ind. Dept. of State Revenue, 660 N.E.2d 310, 316 (Ind. 1995) (citing Helton v. State, 624 N.E.2d 499, 506 (Ind. Ct. App. 1993)). Also, penal statutes are not to be read so narrowly as to exclude instances the statute fairly covers or in a manner that disregards legislative purposes and intent. Merritt v. State, 829 N.E.2d 472, 475 (Ind. 2005).

The case of Jacobs v. State, 640 N.E.2d 61 (Ind. Ct. App. 1994), trans. denied, is instructive. In that case the defendant was charged with Class C felony forgery for selling t-shirts displaying the federally registered trademarks of Guess, Nike, and Polo. Like the counterfeiting statute, Indiana's forgery statute applies to the making or uttering of a "written instrument" as defined in Indiana Code section 35-43-5-1.[6] The Court of Appeals reviewed the legislative history and purpose of the "written instrument" definition and concluded that in revising the statute in 1976 the General Assembly intended to broaden the definition of the term. See id. at 65. The result of this, the court concluded, was that the statute "encompass[ed] a wide range of prohibited conduct" including "the forgery of a registered trademark on a t-shirt." Id. at 64-65.[7]

At first blush it seems intuitive that "written instrument" must at least consist of a document of some kind. But we agree with the Jacobs court that the Legislature broadened the scope and definition of "written instrument" to include more than just documents, paper, and other instruments containing written matter. Instead the definition includes "other objects or

---

[6] The statute in Jacobs was essentially the same as it is today. Written instrument was defined as "a paper, document, or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, or other objects or symbols of value, right, privilege, or identification." I.C. § 35-43-5-1 (1994 supp.).

[7] Although the Jacobs holding applied to the printing on a t-shirt, the Jacobs court did not foreclose the possibility that the physical object (the t-shirt itself) could constitute a written instrument.

symbols of value, right, privilege, or identification." It seems clear enough to us that a handgun or rifle – just as an unsigned Monet painting, Frederick Remington sculpture, or Tiffany vase – could be subject to counterfeiting. To require actual writing or markings on a replica in order to bring it within the reach of the counterfeiting statute would defeat the purpose of the statute and eliminate a very wide range of items. We are not convinced the Legislature intended such a result.

We conclude that Defendants' airsoft gun is a written instrument within the meaning of the statute and therefore reverse the trial court's dismissal of the counterfeiting charges.

## C.    *Do the Facts Alleged Constitute the Offense of Theft?*

The Informations charging the Defendants with theft allege in relevant part:

> Sometime from June 2009 to August 2009, in Huntington County, Indiana, Yu-Ting Lin a/k/a Lin Yu Ting knowingly or intentionally exerted unauthorized control over property belonging to Heckler & Koch, Inc., with the intent to deprive the owner of any part of its value or use, namely: trademarks and/or markings or symbols of identification.

Appellant Lin's App. at A-018-020; see also Appellant Yao's App. 62-64. The trial court denied the Defendants' motions to dismiss the theft charges and the related corrupt business influence charges. The Defendants contend this was error because the facts alleged do not constitute the offense of theft. See I.C. § 35-34-1-4(a)(5).

Indiana Code section 35-43-4-2 provides in relevant part: "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." In advancing their arguments the Defendants make two claims. First, "trademarks and/or markings or symbols" as alleged in the State's charging informations cannot constitute "property" under the theft statute. Second, "it is not theoretically possible . . . to 'exert unauthorized control' over the

10

trademarks and/or markings or symbols." Appellant Lin's App. at A-040; <u>See</u> Appellant Yao's App. at 40.

### 1.  *Trademarks, markings, and symbols as property*

Indiana Code section 35-41-1-23(a) (now I.C. § 35-31.5-2-253(a)) defines "property" as "anything of value." The statute specifies that property includes, among other things, "a gain or advantage," "real property, personal property, money, labor, and services," "intangibles," and "trade secrets." I.C. § 35-41-1-23(a)(1), (2), (3), (9) (now I.C. § 35-31.5-2-253(a)(1), (2), (3), (9)). The definition of property as "anything of value" including "intangibles" is extremely broad and we see no reason it could not encompass the charged "trademarks and/or markings or symbols of identification." <u>See</u> <u>State v. McGraw</u>, 480 N.E.2d 552, 554 (Ind. 1985) (recognizing that the information derived from use of a computer constitutes property under the theft statute). <u>Cf.</u> <u>Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.</u>, 906 N.E.2d 805, 818 (Ind. 2009) (Boehm, J. concurring in result) (agreeing with the majority's implication "that a website design is personal property and is subject to a conversion claim, whether or not it is 'goods' subject to the Uniform Commercial Code"). We hasten to add that we do not declare that the "trademarks and/or markings or symbols of identification" at issue in this case actually have any value. Rather this is an evidentiary matter that is subject to proof at trial. At this stage of the proceedings we reach the narrow conclusion that the charged items may constitute property depending on the evidence.

### 2.  *Exertion of control over trademarks, markings, and symbols*

As discussed earlier, Indiana Code tells us what it means to "exert control" for purposes of the theft statute. "'[E]xert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." I.C. § 35-43-4-1(a). The Defendants contend that it is "not theoretically possible" to "'exert unauthorized control' over a third party's trademark right." Appellant Lin's Br. at 9. And this is so, according to the Defendants, because a trademark is merely the right to use an "identifier" to designate origin or aid in the sale of goods. Appellant

11

Lin's Br. at 9. Thus, the argument continues, the property over which the Defendants are alleged to have exerted unauthorized control is H & K's right to sell products with a distinctive appearance. This, according to Defendants, may constitute trademark infringement but it cannot amount to the exertion of unauthorized control. The Defendants also cite an unpublished federal district court opinion that concluded: "[N]either the Defendants' copying of the distinct look of the [H & K] weapon nor the use of [H & K's registered trademark] itself constitutes obtaining, taking, carrying, driving, leading away, concealing, abandoning, selling, conveying, encumbering, or possessing [H & K's] intangible property." Heckler & Koch, Inc. v. German Sport Guns GMBH, No. 09-cv-00039-WTL-JMS, 2009 WL 3200587, at *1 (S.D. Ind. Sept. 25, 2009). The court's rationale is not readily apparent. In any event we disagree with the court's conclusion. First, we are examining a statute which clearly prohibits a very wide range of activity. See Nash v. State, 433 N.E.2d 807, 813 (Ind. Ct. App. 1982) ("It is well established in Indiana that subsection (a) of the theft statute, which makes it an offense to knowingly exert unauthorized control over property of another, comprehends a broad field of conduct . . . ."). Second, we see no reason a trademark right cannot at least be "encumbered." See, e.g., Black's Law Dictionary 607 (9th ed. 2009) (defining "encumbrance" as "[a] claim or liability that is attached to property or some other right and that may lessen its value . . . "); see also TRIPS: Agreement on Trade-Related Aspects of Intellectual Property Rights, Art. 20, 33 Int'l Legal Materials 90[8] ("The use of a trademark in the course of trade shall not be unjustifiably encumbered by special requirements, such as use with another trademark, use in a special form or use in a manner detrimental to its capability to distinguish the goods or services of one undertaking from those of other undertakings.").

At the heart of and woven throughout the Defendants' argument is the insistence that this case should be resolved under civil trademark infringement law, not criminal law. Lin argues for example, "[b]y taking sides in this commercial dispute and trying to force a resolution in H [&] K's favor under the coercive power of the criminal law, the State has subverted the process of rights-determination that trademark law is intended to embody." Appellant Lin's Br. at 8. But

---

[8] More specifically, TRIPS: Agreement on Trade-Related Aspects of Intellectual Property Rights, Art. 20, Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1C, 33 I.L.M. 90.

whether a theft prosecution is "the 'wrong tool for the job' when it comes to defining intellectual property interests," Appellant Yao's Br. at 15 (quoting 4 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 25:9:50 (4th ed. 2008)), is not our decision to make. Rather, our job is to apply the Indiana criminal statutes as drafted by the Legislature. And under those statutes, the questions in this case include whether the Defendants, did beyond a reasonable doubt: 1) knowingly or intentionally; 2) obtain, take, carry, sell, convey, encumber, or possess property, or secure, transfer, or extend a right to property; 3) which property belonged to H & K; 4) without H & K's consent; 5) with intent to deprive H & K of any part of the property's value or use? And these are all questions of fact that cannot be determined on a motion to dismiss. <u>Cf.</u> <u>McGraw</u>, 480 N.E.2d at 553 (recognizing in prosecuting a person for unauthorized use of a computer as theft that dismissal may have been improper but judgment on the evidence was properly granted because the evidence did not support all the elements required by the theft statute). In this case, the trial court did not abuse its discretion in denying Defendants' motions to dismiss the theft and corrupt business influence charges.

## Conclusion

We affirm the trial court's denial of the motions to dismiss the charging informations on jurisdictional grounds, and its denial of Defendants' motions to dismiss the charging informations alleging theft and corrupt business influence. We reverse the trial court's grant of the Defendants' motion to dismiss the charging informations alleging counterfeiting.

Dickson, C.J., and David and Massa, JJ., concur.

13