**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MAYSON L. ST. CLAIR, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 35A02-1307-CR-577 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1112-FB-252

**February 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Mayson St. Clair ("St. Clair") was convicted after a jury trial of Robbery, as a Class B felony.[1]  He now appeals.

We affirm.

**Issues**

St. Clair raises two issues for our review, which we restate as:

  I.    Whether the trial court lacked personal jurisdiction over him; and

  II.    Whether there was sufficient evidence to sustain his conviction.

**Facts and Procedural History**

On November 3, 2011, at around 7:20 a.m., J. Sue Rumple ("Rumple"), a manager for Beacon Credit Union at a branch office in Huntington, was opening the credit union branch when two men, who were eventually identified as St. Clair and Cody Street ("Street"), approached her.  Street and St. Clair held Rumple at gunpoint and forced her to open drawers at tellers' desks and the credit union's vault.  The money taken from the vault, the tellers' desk drawers, a petty cash tin, and the credit union's night deposit box totaled approximately $7,000.  After this, the two duct-taped Rumple's wrists and hands and left her in the bank vault; Rumple was able to unbind herself, left the vault, and immediately called police.

St. Clair and Street left the credit union on foot, separated, and were eventually able to locate their planned getaway vehicle.  St. Clair was picked up by the getaway vehicle near a cemetery next to the credit union.

---

[1] Ind. Code § 35-42-5-1.

Police were initially left without many leads; however, two gloves were recovered from a cemetery near the credit union's premises, as was a bag of coins and another bag of decoy money, both taken from the credit union. Approximately one month later, an informant contacted the Huntington Police Department and provided information that allowed police to trace St. Clair, Street, and others involved in planning the robbery to the Allen County Jail, where they were being held on unrelated charges. Police first interviewed Street, who after initially denying involvement in the robbery admitted that he had committed the offense along with St. Clair. Later, police had the gloves left at the cemetery tested for DNA; St. Clair's DNA was found in the gloves.

On December 5, 2011, the State charged St. Clair with Robbery.

During the pendency of the proceedings, St. Clair was convicted of Robbery in an unrelated offense and was sent to serve a sentence in the Department of Correction. On April 1, 2013, St. Clair, pro se, filed with the trial court a notice captioned "Proclamation of Nationality," in which he proclaimed himself a "Moorish American." (App'x at 61-62.) On April 22, 2013, during a pretrial conference, St. Clair argued that his status as a Moorish American precluded the trial court from exercising jurisdiction over him, and moved to dismiss the charge of Robbery. The trial court denied the motion. (Tr. at 39-40.)

A jury trial was conducted on May 7 and 10, 2013. At the trial's conclusion, the jury found St. Clair guilty of Robbery, as charged.

On June 3, 2013, a sentencing hearing was conducted, at the conclusion of which the trial court entered judgment against St. Clair and sentenced him to twenty years

3

imprisonment to be served consecutively to his sentences for a prior offense and for three incidences of contempt of court.

This appeal ensued.

**Discussion and Decision**

Jurisdiction

St. Clair raises as his first issue in this appeal whether the trial court lacked personal jurisdiction over him. Specifically, St. Clair contends that his claimed status as a Moorish American who does not acknowledge being subject to the social contract between the United States and its citizens deprived the trial court of jurisdiction over him.[2]

"A person may be convicted under Indiana law of an offense if … either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana." I.C. § 35-41-1-1(b)(1). Indiana courts thus "treat[] territorial jurisdiction as though it were an element of an offense and … the State must prove this element beyond a reasonable doubt." Yao v. State, 975 N.E.2d 1273, 1276-77 (Ind. 2012). Thus, the question "must be submitted to the jury unless the court determines no reasonable jury could fail to find territorial jurisdiction beyond a reasonable doubt." Id. at 1277 (citations and quotations omitted). As the Indiana Supreme Court observed in Yao, "'the scope of a state's jurisdiction in criminal cases is bound up with the scope of its substantive criminal law.'" Id. at 1278 (quoting Allan Erbsen, Impersonal Jurisdiction, Emory L.J. 1, 37 (2010)). "[C]riminal jurisdiction is for the most part a creature of expansive state statutes designed in part to permit prosecution for

---

[2] St. Clair's counsel in this appeal states that St. Clair advanced this argument pro se during trial-level proceedings, and that St. Clair insisted that counsel present this issue to this Court on appeal.

consequences felt within a state resulting from criminal acts occurring outside a state," and developed "quite independently from the doctrine of civil jurisdiction," including personal jurisdiction.  Id.

On appeal, St. Clair argues that the trial court lacked personal jurisdiction over him. While at trial St. Clair claimed that his purported Moorish American citizenship precluded the trial court from exercising jurisdiction over him, he advances no authority on appeal that would support that claim, instead asserting that he did not agree to the imposition of the social contract between himself and the United States.  Further, St. Clair was charged with committing a criminal offense in Indiana, which he was alleged to have committed while he was physically present in Indiana.  Under those circumstances, we cannot conclude that the trial court lacked jurisdiction to try St. Clair.

## Sufficiency of the Evidence

We turn now to St. Clair's other argument on appeal, that there was insufficient evidence to sustain his conviction.

Our standard of review is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict.  Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh evidence.  Id.  We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt."  Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)).  "The evidence is sufficient if an inference may reasonably be drawn from it to

5

support the verdict." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

To convict St. Clair of Robbery, as a Class B felony, the State was required to prove beyond a reasonable doubt that St. Clair, while using force and armed with a deadly weapon, knowingly took property from Rumple. I.C. § 35-42-5-1; App'x at 17.

St. Clair presents a more typical sufficiency argument, and also asserts that Cloud's testimony against him was incredibly dubious.

> Under the incredible dubiosity rule, a court will impinge on a jury's responsibility to judge witness credibility only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Tillman v. State, 642 N.E.2d 221, 223 (Ind. 1994). The incredible dubiosity rule, however, is limited to cases where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt. Id.

Majors v. State, 748 N.E.2d 365, 367 (Ind. 2001) (emphasis supplied). "The incredible dubiosity rule applies to conflicts in trial testimony rather than conflicts that exist between trial testimony and statements made to the police before trial." Buckner v. State, 857 N.E.2d 1011, 1018 (Ind. Ct. App. 2006) (citing Reyburn v. State, 737 N.E.2d 1169, 1171 (Ind. Ct. App. 2000)). For testimony to be so incredibly dubious as to warrant reversal of a conviction or delinquency adjudication, the single witness's testimony must be coerced or "inherently improbable [so] that no reasonable person could believe it." Love v. State, 761 N.E.2d 806, 810 (Ind. 2002).

Taking the matter of incredible dubiosity first, St. Clair argues that Street's testimony is incredibly dubious because Street initially denied to police that he had any involvement in

6

the robbery. This falls cleanly outside the type of testimony incredible dubiosity is intended to address. See Buckner, 857 N.E.2d at 1018 ("incredible dubiosity … applies to conflicts in trial testimony," and not to conflicts between trial testimony and pretrial statements). And other corroborative evidence exists in the form of the gloves found at the cemetery near the credit union, where the getaway vehicle retrieved St. Clair. DNA testing of the gloves resulted in a match with St. Clair's DNA. See Majors, 748 N.E.2d at 367 (limiting incredible dubiosity to "inherently improbable" or "coerced, equivocal, wholly uncorroborated testimony").

Turning to the remainder of St. Clair's sufficiency argument, Street testified that he and St. Clair together robbed the credit union, that St. Clair held the gun used to commit the offense, and that he and an associate picked St. Clair up from the cemetery near the credit union. Rumple, the credit union manager, testified that the robbers used a gun in the course of the offense, wore gloves, and took money from the credit union. Further, St. Clair's DNA was found in gloves left near the scene. This is sufficient evidence from which a jury could infer that St. Clair committed the offense of Robbery, as charged. To the extent St. Clair contends that Street's testimony is not credible and that Rumple's testimony lacked sufficient specificity, we decline to reassess the jury's determinations of credibility and weight. See Drane, 867 N.E.2d at 146.

## Conclusion

The trial court did not improperly exercise jurisdiction over St. Clair. There was sufficient evidence to support St. Clair's conviction of Robbery.

7

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.