## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 22 2016, 5:49 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT A.H.

Stuart K. Baggerly
Monroe County Public Defender
Bloomington, Indiana

ATTORNEY FOR APPELLANT J.H.

Kara E. Krothe
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

A.H. and J.H.,
*Appellants-Defendants,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 22, 2016

Court of Appeals Case No.
53A01-1507-JV-994

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

Trial Court Cause Nos.
53C07-1412-JD-752
53C07-1412-JD-753

**Mathias, Judge.**

[1] In this consolidated appeal, A.H. and J.H. challenge the order of the Monroe Circuit Court adjudicating them to be delinquent children for committing what would be Level 3 arson and Level 4 arson if committed by an adult. On appeal, A.H. and J.H. claim that the State failed to present evidence sufficient to prove that the acts at issue were committed in Monroe County, Indiana.

[2] We affirm.

## Facts and Procedural History

[3] At the time relevant to this appeal, Maria Cortes lived in a house on West 12th Street in Bloomington, Indiana. On December 11, 2014, Ms. Cortes came home from a shopping trip and observed a teenage boy and girl walking from behind the house at 1019 West 12th Street, which was next door to her house. This struck Ms. Cortes as odd, as the 1019 house was vacant at the time. Ms. Cortes recognized the boy as A.H. and the girl as J.H., both of whom had been friends of the previous tenants at the now-vacant house. About two minutes after Ms. Cortes arrived home, a neighbor knocked on her front door and informed her that the vacant house next door was on fire. Another neighbor telephoned 911.

[4] In the meantime, A.H. and J.H. had gone to a nearby basketball court, where they met an acquaintance, S.B., who asked them if they had set the house on fire. According to S.B.:

> [A.H.] wasn't shy about it. He told me he done it. And then I asked him how he done it and why were they in the house and

they told me that they were in the house because they were bored and they were just hanging out. And then they were bored I guess and they tried to light a cup on fire I think and it didn't light and so then they lit a blanket on fire and [J.H.] shoved it in the couch cushion and that's how the fire got started.

Tr. p. 44.

[5] The first officer on the scene was Shawn Hines ("Officer Hines") of the Bloomington Police Department, who reported to a possible structure fire on West 12th Street. Officer Hines determined that no one was in the structure, then began to keep the gathering crowd away from the fire. Officer Hines spoke with the man who had called 911. This man told Officer Hines that Ms. Cortes had "possibly seen something." Tr. p. 5. Officer Hines spoke to Ms. Cortes who indicated that A.H. was possibly involved with the fire.

[6] The Bloomington Fire Department responded to the scene. As the firefighters battled the blaze, Bloomington Fire Department Fireman Matthew Peterson ("Fireman Peterson") was knocked down the stairs and injured his lower back and buttocks, causing him pain. The firefighters were able to put out the fire but not before the house sustained severe damage. Bloomington Fire Inspector Joe Johnson ("Inspector Johnson") investigated the fire and determined that it had started on a futon located in the upstairs living room. Inspector Johnson ruled out accidental causes, such as an electrical fire, and concluded that the fire had been set. He based his conclusion on the burn patterns on the ceiling above the futon and the lack of other sources of ignition near where the fire started. It was later determined that the house, which was valued at $179,000, was a total loss.

Bloomington Police Department Detective Steven Reynolds ("Detective Reynolds") investigated the suspected arson and later spoke with the prior tenant of the home. Detective Reynolds mentioned that two children were seen leaving the area of the home and asked the former tenant if her children had any friends about the age of these children. The tenant then mentioned A.H. and J.H. by name. Detective Reynolds later interviewed A.H. and J.H., who denied involvement with the arson.

On December 15, 2014, the trial court authorized the filing of a petition alleging that A.H. and J.H. were delinquent children for committing what would be Level 4 arson if committed by an adult. On April 27, 2015, the State amended the petition to include allegations that A.H. and J.H. had committed what would be Level 3 felony arson resulting in bodily injury if committed by an adult.

The trial court held a fact-finding hearing on April 29, 2015, at the conclusion of which the court took the matter under advisement. On May 6, 2015, the trial court entered a true finding adjudicating A.H. and J.H. to be delinquent children. At a dispositional hearing held on June 1, 2015, the trial court ordered A.H. and J.H. to serve sixth months of formal probation, pay restitution to the victims, and complete the Bloomington Fire Department's Fire Setting Program. A.H. and J.H. now appeal.

## Discussion and Decision

[10] A.H. and J.H. claim that the State failed to sufficiently establish that the acts upon which their delinquency finding was based occurred in Monroe County. When the State seeks to have a juvenile adjudicated as a delinquent child for committing an act which would be a crime if a committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *E.D. v. State*, 905 N.E.2d 505, 506 (Ind. Ct. App. 2009). When we review a juvenile adjudication, we consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. *Id*. If substantial evidence of probative value exists from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id*. at 506-07.

[11] A.H. and J.H. argue that the State was required to prove "territorial jurisdiction" beyond a reasonable doubt. *See An-Hung Yao v. State*, 975 N.E.2d 1273, 1276-77 (Ind. 2012) (noting that the State of Indiana must prove beyond a reasonable doubt that the crime at issue occurred in Indiana). Here, the issue is not one of "territorial jurisdiction" because no one contends that the crimes occurred outside Indiana. Instead, A.H. and J.H. claim that the State failed to prove that the crimes occurred in Monroe County. This may raise a claim of failure to prove venue, not territorial jurisdiction.

[12] In a criminal proceeding, a defendant has a constitutional and statutory right to be tried in the county in which an offense allegedly was committed. *Baugh v. State*, 801 N.E.2d 629, 631 (Ind. 2004) (citing Ind. Const. Art. 1, § 13; Ind.

Code § 35-32-2-1(a)). A juvenile alleged to be a delinquent child has a similar statutory right. *See* Ind. Code § 31-32-7-1 (If a child is alleged to be a delinquent child . . . proceedings under the juvenile law may be commenced in the county: (1) where the child resides; (2) where the act occurred; or (3) where the condition exists."). However, venue is not an element of the offense, and the State may establish venue by a preponderance of the evidence and need not prove it beyond a reasonable doubt. *Id*. Venue may be established by circumstantial evidence. *Bryant v. State*, 41 N.E.3d 1031, 1037 (Ind. Ct. App. 2015).

[13] Here, however, neither A.H. nor J.H. made any objection to the trial court's venue at either the fact-finding hearing or the dispositional hearing. The failure to object to venue results in waiver of the alleged error. *Smith v. State*, 809 N.E.2d 938, 942 (Ind. Ct. App. 2004). Waiver notwithstanding, we conclude that the State presented evidence from which the trial court could reasonably find, by a preponderance of the evidence, that the acts alleged to be crimes occurred in Monroe County. Several witnesses testified that the fire occurred on 1019 West 12th Street. The first person to respond to the 911 call was an officer with the Bloomington Police Department, and the Bloomington Fire Department also responded to the call. The fire inspector who investigated the fire testified that he was employed by the City of Bloomington. Also, the police detective who investigated the arson worked for the Bloomington Police Department. From this evidence, the trial court could reasonably conclude that the fire took place in Bloomington, Indiana. Both this court and the trial court

are allowed to take judicial notice that Bloomington is in Monroe County. *See Buhmeier v. State*, 206 Ind. 645, 647, 190 N.E. 857, 858 (1934) (taking judicial notice that City of Evansville is in Vanderburgh County); *see also* Ind. Evidence Rule 201(a) (providing that a trial court may take judicial notice of a fact that "is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction[.]").[1]

## Conclusion

Under the facts and circumstances present in this case, the trial court could reasonably conclude that the acts alleged occurred in Monroe County. Thus, the State properly proved venue, and we affirm the judgment of the trial court.

Affirmed.

Kirsch, J., and Brown, J., concur.

---

[1] Even if the issue were to be framed as one of territorial jurisdiction as alleged by A.H. and J.H., this same evidence is sufficient to establish beyond a reasonable doubt that the acts alleged to be crimes occurred in Indiana.