## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 20 2018, 10:06 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Liisi Brien
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Duane R. Tackett,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 20, 2018

Court of Appeals Case No.
18A05-1707-PC-1593

Appeal from the Delaware Circuit Court 1

The Honorable Marianne L. Vorhees, Judge

Trial Court Cause No.
18C01-1404-PC-002

**Mathias, Judge.**

[1] Duane R. Tackett ("Tackett") appeals the order of the Delaware Circuit Court denying his petition for post-conviction relief. On appeal, Tackett presents one

issue, which we restate as whether the post-conviction court clearly erred in determining that Tackett's trial counsel was not constitutionally ineffective for failing to impeach a witness for the State.

[2] We affirm.

## Facts and Procedural History

[3] In our memorandum decision in Tackett's direct appeal, we set forth the facts underlying Tackett's convictions as follows:

> A.J. was born on July 24, 1980, and suffers from mental retardation, seizure disorder, cerebral palsy, and autism. During the investigation and trial, when A.J. was in her late twenties, her IQ was 57 and she had the mental capacity of a seven- to nine-year-old. Tackett married A.J.'s mother, Patricia, in 1983. As A.J.'s step-father, Tackett began touching A.J. in a sexual manner while A.J. was in elementary school, and continued while A.J. was in middle school and, after the three-person family moved to Kentucky, while A.J. was in high school.
>
> Specifically, Tackett touched A.J.'s breasts and vagina with his mouth, and placed his penis inside A.J.'s vagina. He touched A.J.'s rear-end as well, and had her touch his penis with her hands and mouth. On at least one occasion, Tackett attempted to place his penis inside A.J.'s anus, but Patricia stopped him because A.J. was in "too much" pain. Transcript at 327. Tackett and Patricia told A.J. that "what goes on in the bedroom stays in the bedroom." *Id*. at 74 (in question by prosecutor with agreement by A.J.); *see id*. at 315 (in question by prosecutor with agreement by Patricia). Tackett's regular sexual relations with A.J. continued until his arrest in mid-2008.
>
> Tackett, Patricia, and A.J. moved back to Indiana from Kentucky in March 2008, when A.J. was twenty-seven years old.

Soon after their return, Sylvia Norris, A.J.'s aunt who lived in Indiana, noticed A.J. wore a ring and asked A.J. why she wore it on her left ring finger. A.J. did not respond. Norris then noticed A.J. also wore a birth control patch. In early May 2008, A.J. told Norris and another aunt that Tackett forced her to pull her pants down, and hit her when she did not do so.

Norris contacted the police and on May 13, 2008, the State charged Tackett with rape, sexual misconduct with a minor, and criminal deviate conduct, all Class B felonies, and child solicitation, a Class D felony. A jury found Tackett guilty as charged, and the trial court entered a judgment of conviction as to all four offenses. Following a hearing, the trial court sentenced Tackett to consecutive twenty-year sentences for each Class B felony, to be served concurrent with a three-year sentence for child solicitation, for an aggregate sentence of sixty years. . . .

*Tackett v. State*, 18A05-1101-CR-0007, 2012 WL 252422, slip op. at 3–4 (Ind. Ct. App. Jan. 26, 2012) (footnote omitted), *trans. denied*.

[4] On direct appeal, Tackett claimed that: (1) the evidence was insufficient to show that his offenses were committed within the statute of limitations; (2) the trial court erred in determining that A.J. need not testify in Tackett's physical presence; (3) the trial court erred in permitting three witnesses to repeat prior consistent statements by A.J., (4) the trial court erred in denying Tackett's request to re-cross examine A.J., (5) his convictions constituted impermissible double jeopardy; and (6) his sixty-year sentence was inappropriate. Rejecting all

of these claims, we affirmed.[1] Our supreme court denied Tackett's petition to transfer. *Tackett v. State,* 969 N.E.2d 604 (Ind. 2012) (table).

On April 2, 2014, Tackett filed a pro se petition for post-conviction relief. On April 4, 2016, Tackett, now represented by counsel from the Indiana Public Defender's office, filed an amended petition for post-conviction relief. On January 13, 2017, the post-conviction court held an evidentiary hearing on Tackett's petition.[2] On June 28, 2017, the post-conviction court entered findings of fact and conclusions of law denying Tackett's petition. Tackett now appeals.

## Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Post-conviction proceedings instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Thus, on appeal from the denial of a petition for

---

[1] The State also charged A.J.'s mother, Patricia, with Class B felony rape, Class B felony sexual misconduct with a minor, and Class D felony child solicitation. On direct appeal, a panel of this court reversed all of Patricia's convictions, concluding that the State failed to prove territorial jurisdiction beyond a reasonable doubt, i.e. that the crimes Patricia was charged with were committed in Indiana. *See Tackett v. State*, 18A02-1008-CR-1053, 2011 WL 1878116 (Ind. Ct. App. May 16, 2011), *trans. denied*.

[2] Prior to the start of the hearing, Tackett filed a second amended petition that deleted his first two grounds for relief.

post-conviction relief, the petitioner appeals from a negative judgment. *Id*. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643–44.

[7] Here, the post-conviction court made specific findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). On review, we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings for clear error. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

## Ineffective Assistance of Trial Counsel

[8] Our supreme court has summarized the law regarding claims of ineffective assistance of trial counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the

defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the *Strickland* test are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

*Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

# Discussion and Decision

Tackett argues that his trial counsel was ineffective for failing to impeach the victim, A.J., with her prior testimony from her mother Patricia's trial that the molestation began when she was attending high school in Kentucky. Tackett claims that had his counsel impeached A.J. on this issue, the State would not have been able to prove territorial jurisdiction.

## A. Territorial jurisdiction

[10] Indiana Code section 35-41-1-1(b) provides that "[a] person may be convicted under Indiana law of an offense if: (1) either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana." The Indiana Criminal Code does not list jurisdiction as an element of most offenses. *See An-Hung Yao v. State*, 975 N.E.2d 1273, 1276 (Ind. 2012). Nonetheless our supreme court held in *An-Hung Yao* that "[t]he plain, ordinary, and usual meaning of [Indiana Code section 35-41-1-1] clearly establishes 'in Indiana' as a prerequisite for Indiana criminal prosecutions and thus restricts the power to exercise criminal jurisdiction to Indiana's actual territorial boundaries." 975 N.E.2d at 1276 (citing *Benham v. State*, 637 N.E.2d 133, 137 (Ind. 1994)). Thus, our courts treat territorial jurisdiction as though it were an element of an offense which the State must prove beyond a reasonable doubt. *Id.* at 1276–77 (citing *Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002)). Accordingly, the issue of territorial jurisdiction must be submitted to the jury unless the court determines no reasonable jury could fail to find territorial jurisdiction beyond a reasonable doubt." *Id.*

## B. A.J.'s Testimony

[11] Tackett claims that his trial counsel should have impeached A.J.'s testimony at his trial with her testimony in her mother's trial. Tackett specifically refers to the following portions of A.J.'s testimony on direct examination at her mother's trial:

Q.    Okay. [A.J.], do you remember how old you were the first time this happened, the first time that [Tackett] touched you in a way that you didn't like?

A.    (Inaudible).

Q.    Okay. Were you in high school?

A.    Magoffin County High School [in Kentucky].

Post-Conviction Ex. Vol., Petitioner's Ex. C., p. 424. A.J. also testified on cross-examination as follows:

Q.    . . . [T]he touches you didn't like, and you talked about [Tackett]. I need to know, did those touches happen in Indiana or Kentucky:

A.    Kentucky.

Q.    Kentucky?

A.    Yeah.

*Id.* at 464.

[12]    In contrast, at Tackett's trial, A.J. testified on direct examination as follows:

Q.    Alright, [A.J.], when [Tackett] started touching you, the first time when he started touching you, do you remember what school you were going to?

A.    Grissom [Elementary School in Muncie, Indiana].

Q.    You were going to Grissom?

A.    Uh-huh.

Trial Tr. p. 247.

[13] At the post-conviction hearing, Tackett's trial counsel testified that he strategically chose not to cross-examine A.J. regarding her prior testimony. He testified that he did not desire to bring up anything that happened in Kentucky out of concern that referencing her prior testimony would have only exposed the jury to more "graphic details" and even more acts of molestation that might have occurred. *See* P-C.R. Transcript at 17–18. Indeed, trial counsel testified that he was well aware of the territorial jurisdiction issues that plagued Patricia's trial, but believed that these issues were not a problem in Tackett's trial because of A.J.'s testimony that clearly stated that the crimes took place in Indiana.

[14] Given the considerable discretion afforded to counsel in choosing strategy, we cannot say that Tackett's trial counsel's strategy fell below an objective standard of reasonableness. Indeed, it seems entirely reasonable for Tackett's trial counsel to desire not to expose the jury to evidence of further misconduct on Tackett's part. In fact, counsel's strategy appears to have been to argue to the jury that A.J.'s testimony was suspect due to the influence of her aunt, who had given her gifts and promised her more gifts in return for testifying. We cannot say that this strategy was clearly inferior to attacking A.J.'s credibility regarding territorial jurisdiction.

[15] Accordingly, we conclude that the post-conviction court did not clearly err in determining that the performance of Tackett's trial counsel did not fall below an objective standard of reasonableness and that Tackett's trial counsel was therefore not constitutionally ineffective.

# Conclusion

[16] It was Tackett's burden as a post-conviction petitioner to establish his claim for relief. Thus, on appeal he must show that the evidence as a whole led unerringly and unmistakably to a conclusion that his trial counsel was ineffective. He has not done so. We therefore affirm the judgment of the post-conviction court.

[17] Affirmed.

Najam, J., and Barnes, J., concur.